EMMA FROHS, Appellant, v. CITY OF DUBUQUE, Appellee.

**EVIDENCE:** Exclusion of—Non-Prejudicial Error. The exclusion of
1 an answer to a question seeking to show whether the curve of a
wagon track, if extended, would or would not have passed over a
pile of dirt was not prejudicial when the witness fully described
and illustrated the conditions.

**MUNICIPAL CORPORATION:** Defect in Street—Notice of—Jury
2 Question. Knowledge of an excavation and obstruction in a much
frequented street may be found from the fact that the city en-
gineer, under authority, authorized the excavation and, by ordi-
nance, the duty to superintend the work rested on the superin-
tendent of streets, the work having proceeded for two days before
the accident.

**NEGLIGENCE:** Precautions—Duty Fulfilled—Non-Necessity to Do
3 More. When that which is done is all that ordinary prudence re-
quires in order to warn travelers of obstructions in streets, it is
not negligence to omit other precautions, even though required
by ordinance, when the doing of the thing omitted would afford
no additional protection.

PRINCIPLE APPLIED: An excavation for sewer 10 ft. long,
20 in. wide, and 17 in. deep, was made as a private improvement
on day of accident, on west side of a much frequented street.
It extended southeast from curb to within two feet of the west
rail of street car track. Dirt and rock, piled on north side of
ditch, made an embankment 3 ft. high near west end and 2 ft.
high near middle and slanting down to a point near the car track.
White lantern was hung 3½ ft. from ground near east end of
ditch, and 5 ft. west on top of embankment was placed a red
lantern. No showing that lanterns could have been placed in
more effective position. Red lantern somewhat smoky at time of
accident, less than two hours after being placed. There were
no other lights in the block, a distance of 600 feet. No barriers
were placed around the ditch by the private contractor, *though
required of him by ordinance*. Night very dark. Deceased drove
south directly toward red lantern. Fifteen feet from embankment
team turned to left, wheel struck bank, also the white lantern,
and deceased was thrown off and killed.

*Held*, the warnings given fully discharged the city's duty and

as barriers would have afforded no added protection, it was not negligence to omit them.

*Appeal from Dubuque District Court.*—HON. J. W. KINT-ZINGER, Judge.

SATURDAY, DECEMBER 19, 1914.

REHEARING DENIED TUESDAY, MARCH 16, 1915.

ACTION for damages resulted in a directed verdict for the defendant from which plaintiff appeals.—*Affirmed.*

*Kenline & Roedell,* for appellant.

*M. H. Czizek* and *M. D. Cooney,* for appellee.

LADD, C. J.—The plaintiff is administratrix of the estate of Christ J. Frohs, who lost his life on October 29, 1912, being thrown from a wagon while driving along Couler Street, between 28th and 27th streets in the city of Dubuque. Several days previous, a sewer ditch had been excavated from a house on the west side of the street to the sidewalk about five feet deep and later this was extended to the curbstone and on the 29th, work was begun in excavating from the curbstone to within two feet and four inches of the west track of the street car line. The street was macadamized so that in excavating the ditch stones were removed, leaving the edges of the ditch somewhat irregular, varying in width from 16 to 24 inches, and from 14 to 20 inches deep. From the curbstone, the ditch extended somewhat south of east for a distance of nine feet and ten inches. The earth and rocks taken out were piled on the north side so that the base of the embankment was 3 feet 8 inches to 4 feet wide and varied in height from 1½ inches at the end near the car track to 2 feet in the center and about 3 feet at the curb. At the end of the ditch, near the car track, a plank was laid across the ditch about a foot above the surface and a 2x4 scantling leaned against it with one end in the ground, and at the other was

hung a large lantern with white light ten inches in the clear from the scantling and about 3½ feet above the surface. About five feet west of this was a lantern with red globe sitting on top of the embankment. These lanterns had been cleaned and lighted at ten minutes after five o'clock P. M. There were no barriers other than the embankment and no electric lights between 28th and 27th streets, a distance of 600 feet. There was a drug store at the corner of 27th and Couler streets with a glass front, which was lighted at the time. From there to the next street south were no street lights. The deceased was driving a wagon for the Iowa Oil Company, having on it three barrels and several cans or tanks, and at six o'clock in the evening, he had met Purcell, driving a wagon for the Standard Oil Company, at the Giesel Springs saloon, where he took "a couple beers" and left at 25 minutes to seven o'clock, Purcell following. This was about one and one-half miles from the city limits, which were five or six blocks from the place of the accident. His team was spirited and was traveling rapidly along the right side of the street as they approached the ditch from the north. When about fifteen feet from it, his horses turned toward the car track and as the wagon wheel or wheels struck the embankment, deceased fell from his seat in front on to the singletree and, after being carried some distance, fell off and was run over. One wagon wheel struck the white lantern hanging on the 2x4. Both were still lighted, though the red globe may have been somewhat smoky. The night was very dark. The city ordinance provided that:

"No person, partnership or corporation shall make or cause to be made any excavation in any unpaved street or alley without written permit from the City Engineer. All excavations and fillings are to be done under the direction of and to the satisfaction of the Street Commissioner.

"Whenever any permit shall be issued the Recorder shall give written notice of the same to the Street Commissioner who shall have supervision of the work of excavation, and

shall see that the same is done in all respects in accordance with the permit granted."

.I. The only eyewitness was John Becker, a draftsman, who was standing at the gate leading to the house from which the ditch was dug. After testifying that the team when about 15 feet from the ditch turned to the east and that he had observed the wagon tracks later, he was asked in substance, "Whether or not the angle of the circle that the wagon was describing at and before it reached the accumulation of rocks and dirt was such that in the event there had been nothing to deflect the course of the wagon whether it would have crossed over the ditch or otherwise." An objection as incompetent, immaterial and irrelevant and calling for a conclusion was sustained, the court remarking that the witness might describe the wagon tracks and where the turn was, and in ruling on a similar question, said he might describe the tracks by using a board, and we understand from the record that he did illustrate on a blackboard. The ruling was not prejudicial. Where the line of a small circle will extend is not a matter of expert evidence but within the knowledge of anyone of ordinary intelligence. Whether in the nature of a fact conclusion need not now be considered. The witness described the curve in its relation to the embankment and ditch, and therefrom the jury was able to say whether, but for some obstruction, the deceased likely would have avoided the ditch. Conditions were such as could be easily described and conclusions drawn therefrom by the jury. The ruling was without prejudice.

1. EVIDENCE: exclusion of: non-prejudicial error.

II. Whether the city was charged with notice was an issue appropriate for the jury. The permit to excavate and lay the sewer pipe was obtained from the city recorder October 18, 1912, and the day previous, permission had been obtained for the sewer connection from the city engineer. By city ordinance it was the duty of the recorder upon issuing the permit to give notice to the street commissioner, who is given

2. MUNICIPAL CORPORATION: defect in street: notice of: jury question.

supervision of the work of excavation. The evidence discloses that Couler is one of the well-traveled thoroughfares of the city and that residences are close to each other on each side of the street, and that at least as early as Friday before the Tuesday of the accident, the excavation was begun, and was extended from the sidewalk to the curbing on Monday, and the remainder of the work done on Tuesday. In view of the duty imposed on the recorder and street commissioner and the use made of the street, and excavation being done during the two days prior, we are of opinion that evidence was sufficient to carry the issue as to notice to the jury. *City Council of Augusta v. Cone*, 91 Ga. 714, 17 S. E. 1005; *McClammy v. Spokane*, 36 Wash. 339, 78 Pac. 912; *Oklahoma City v. Welsh*, 3 Okla. 288, 41 Pac. 598; 5 Thomp. Neg., Sec. 5993. As it was made the duty of the superintendent of the streets to superintend the work and the city engineer by authority authorized the excavation, it is not perceived upon what theory it can be said that the city was not aware of the condition of the street. In any event, there was enough at least to carry the issue to the jury.

III. Might the jury have found defendant negligent? The city was by statute required to keep its streets in repair and free from nuisances, and though excavations therein for certain purposes, as in laying sewer pipe, are necessary and do not necessarily constitute a nuisance, it is incumbent on the city at all times to exercise ordinary care in guarding travelers against injury by barricading these or by lights warning them against the danger thereof. This duty to take reasonable precautions as the nature of the case requires to safeguard travelers upon the street against injury from such excavations, is none the less imperative where made by others as licensees or independent contractors or others by permission or under the direction of the city. *Pace v. Webster City*, 138 Iowa 107; 5 Thompson on Negligence, Secs. 6018, 6020, 6036. The duty cannot be delegated nor the responsibility evaded. *Pow-*

3. NEGLIGENCE: precautions: duty fulfilled: non-necessity to do more.

*ell v. Waterloo,* 144 Iowa 689, 691; *Bennett v. Mt. Vernon,* 124 Iowa 537. So that whether private or public improvements are being made in the streets and under whatsoever arrangement, the obligation of the city to maintain the streets in a reasonably safe condition and to exercise reasonable diligence to guard and protect travelers thereon from receiving injury is continuous. A traveler is not bound to apprehend danger nor to be vigilant in discovering obstructions but may walk or drive in daytime or nighttime, relying upon the assumption that the municipality has performed its duty in maintaining the streets in a reasonably safe condition for public travel and has not by its neglect exposed him to danger. *Pettengill v. City of Yonkers,* 116 N. Y. 558, 22 N. E. 1095; *Drake v. Seattle,* 70 Pac. (Wash.) 231; *McAllister v. City of Albany,* 23 Pac. (Ore.) 845; *Grider v. Jefferson Realty Co.,* 116 S. W. (Ky.) 691. All exacted from him is the exercise of ordinary care in the use of the streets.

The issue then is not whether the private contractor putting in the sewer was negligent in not obeying the ordinance with reference to the barrier, but whether what was done was all that was essential in the discharge of the city's duty to warn or guard travelers against the danger arising from the obstruction. If placing the lanterns as they were in the evening in question was sufficient and all that ordinary prudence required, there was no negligence on the part of the city; if such ordinary prudence exacted more lights or in addition thereto a barrier, then the city was negligent.

The evidence was such as to leave no doubt but that the white light, hanging above the embankment and 3½ feet above the surface, could have been seen by an approaching traveler, and that deceased either saw it or could have seen it had he looked. Its location near the center of the street was a warning to take necessary precaution to avoid some danger at and in the vicinity of the lantern. So, too, the red light was at the top of the bank half way to the curb line, and though the globe may have been somewhat smoky, was

shown to be visible for some distance. The darkness would render those lights the more effective. It is not perceivable how a barrier would have afforded additional protection. This would have been scarcely more visible than the embankments. If, then, deceased could only have seen it because of the lights and therefore would have been warned by the lights quite as well as though there were also barriers, these were not required. The circumstance that the red light was toward the west indicated that the obstruction extended in that direction, and that if there were a way open at all this must have been on the east side of the street. It is suggested that the lanterns, in view of the way they were placed, might have been found inadequate to give the required warning. This is a mere guess, for there was no evidence to that effect or as to how else they should have been placed. Even if the ditch was at an angle of 45 degrees with the curb line, and the white light a little farther south than the red light, and the latter somewhat north of the end of the ditch at the car line, the distance was not so far but that the excavation and earth could have been seen by the light before reaching it. Moreover, the evidence disclosed that deceased was driving about half way between the curb and the car track and therefore directly toward the red light, with the white light not over two feet farther on, and with them so close together he could not well have been misled. The angle of the ditch, then, did not render the light less effectual as a warning to a traveler coming from the north. No ground appears for saying the lanterns did not light the entire length of the excavation and afford adequate warning of the danger incident to the ditch and embankment. This being so, the jury was rightly directed to return a verdict for defendant. Having reached this conclusion, it is unnecessary to inquire whether deceased was at fault. The judgment is—*Affirmed*.

WEAVER, EVANS and PRESTON, JJ., concur.