EMELIA A. HOLMQUIST, Administratrix, Appellant, v. C. L. GRAY CONSTRUCTION COMPANY, Appellant, and CITY OF DES MOINES, Iowa, Appellee.

**MUNICIPAL CORPORATIONS:** Duty as to Streets—Reciprocal Rights and Duty of City and Property Owner—Negligence. Liability of a city by reason of the condition of its streets must rest on some breach of its statutory duty (Sec. 753, Code) over its streets. In determining whether the city has breached its duty, it must be remembered that the private property owner, during his building operations, has a right to a reasonable use of the street and the conduct of the city must be fairly judged in the light of that fact.

PRINCIPLE APPLIED: A brick building, flush with the lot line, was erected on the north side of a street. For four months after construction started, barriers excluded people from the sidewalk. They were then removed at the request of the superintendent of streets so that people going to the State Fair could use the sidewalk, and it was thereafter so used. The ordinance duties of the superintendent did not appear. The builder made no objection to the request for the removal of the barriers, nor did he indicate to the commissioner that such removal would be dangerous. When the barriers were removed the front wall was up about half way, 20 feet. A new barrier extending from a point inside the sidewalk to the building was erected when the first

barriers were taken down. Lumber was piled in front of the building on the edge of the sidewalk and street. The sidewalk on the south side of the street was always open, as was the street, aside from the lumber aforesaid. No material was hoisted from outside the building. No covering was ever built over the sidewalk nor were warning signs posted. An ordinance prohibited the obstruction of the sidewalk "pavement" by building materials and required builders to build roofs over sidewalks during construction. The front wall was in time completed, 45 feet high. During a high wind, blowing 40 miles per hour, a workman on top of this wall, reaching up and out and pointing up the wall, was blown off and in his fall killed a pedestrian on the sidewalk below. There was no showing that the city knew that workmen were, or had been, pointing up this wall in high winds by leaning out over the top thereof. *Held*, (a) the order of the superintendent was not a negligent act, (b) nor did it create a nuisance, and (c) no negligence on the part of the city was shown. (In this case the ordinance was introduced against the city without objection. It was excluded as to the other defendant.)

**NEGLIGENCE:**    Proximate  Cause—Causal  Connection.    Liability
2    must be predicated on a cause that is proximate. In instant case, held that the order of a commissioner of public streets to a building contractor to remove barriers which excluded pedestrians from the sidewalk was not the proximate cause of the death of a pedestrian who was killed by being struck by the body of a workman blown from the building by a high wind.

   PRINCIPLE APPLIED:   (See preceding application.)

**NEGLIGENCE: Unusual and Unforeseen Accidents—Ordinary Care—**
3    **Workmen Blown from Building.** Whether a builder erecting a building near and adjacent to a public street should, in the exercise of ordinary care, have provided barriers, warning signals or a covering over the sidewalk, and thereby guarded against the unusual occurrence of a workman being blown from the walls upon a passer-by, *held* to be a jury question.

   PRINCIPLE APPLIED:   (See preceding application.)

**NEGLIGENCE:**    Contributory  per  se—Facts  Not  Constituting.
4    Whether a pedestrian walking along a public street in front of a building in process of erection and hit by a falling workman who was blown from the building was guilty of contributory negligence, *held* to be a jury question.

   PRINCIPLE APPLIED:   (See preceding application.)

**NEGLIGENCE:  Barriers on Streets—Removal on Orders of City—**
5    **Effect on Builder's Liability.** The removal, in compliance with

orders of a city official, of barriers over a sidewalk in front of a partially erected building, will not absolve the builder from liability if the builder in the exercise of ordinary care knew that such removal would open up an avenue of danger to passersby. Orders or no orders, the builder must exercise reasonable care.

PRINCIPLE APPLIED: (See preceding application.) In addition to preceding facts, the builder when he complied with the request for removal of the barriers did not inform the official, who did not know the real condition, that the order was premature and that there was danger in such removal.

**NEGLIGENCE:** Act of God—When no Protection. One will not be permitted to screen himself behind an act of God, when his own contributory negligence concurred with such act to bring about the accident.

PRINCIPLE APPLIED: (See preceding application.)

*Appeal from Polk District Court.*—Hon. James P. Hewitt, Judge.

WEDNESDAY, MARCH 17, 1915.

THIS is an action at law brought by Emelia A. Holmquist, Administratrix of the Estate of John A. Holmquist, deceased, because of the wrongful acts of the defendants. Trial to a jury. At the close of the evidence both defendants moved for a directed verdict. The motion was sustained as to the defendant city and overruled as to the construction company. There was a verdict and judgment for plaintiff and against the last named defendant for $6,000.00. The plaintiff first appealed from the directed verdict against her and in favor of the city. Later, the defendant construction company appealed.—*Affirmed on both appeals.*

*Thos. A. Cheshire,* for appellant, Emelia A. Holmquist, Administratrix.

*Parker, Parrish & Miller,* for C. L. Gray Construction Company, appellant.

*H. W. Byers, R. O. Brennan* and *Eskil C. Carlson,* for appellee.

PRESTON, J.—It is alleged that the defendants maintained and permitted a nuisance and were negligent in the following particulars:

1. In failing to erect, or cause to be erected, over the sidewalk, adjacent to and in front of the wall that was being constructed, a safe and suitable covering of boards, so that pedestrians walking along in front of said building would be protected from injury by falling workmen or material.

2. In requiring and permitting workmen to work on said wall on the 21st day of October, 1909, with the high wind that was prevailing, making it almost impossible for the men to maintain their positions on the work because of such wind.

3. In creating conditions in the street in front of the building which made the street at that point a public nuisance.

4. In failing to place barriers across the sidewalk and from the curb to the building, preventing the use of that portion of the street by pedestrians.

5. In failing to post in a conspicuous place on either side of the south end of said building, and at and between the curb line and the wall, conspicuous signs warning the public of danger in passing along the street in front of said wall.

6. In violating and permitting to be violated the provisions of Section 757 of the Revised Ordinances of Des Moines.

All but the third and sixth grounds were submitted to the jury, as to the construction company. The court withdrew from the jury the question as to the alleged public nuisance, holding that the evidence did not show a nuisance. The defendant city did not object to the ordinance referred to later, but conceded that it was in force at the time plain-

tiff's intestate was killed. But the construction company pleaded in an amendment to its answer that the ordinance was invalid because it contains more than one subject, and that the provision of the ordinance relating to the construction of barriers, roofs or sheds for the protection of the public is not clearly expressed in the title, and objected to the ordinance on the same ground. The objection was sustained, but the verdict was in plaintiff's favor and against the construction company, and the plaintiff has not appealed from that ruling. We are not, therefore, called upon to determine the correctness of the court's ruling as to the ordinance.

The two defendants are sued as alleged joint tort-feasors. Some of the questions involved in the appeal by plaintiff are common to those urged in the construction company's appeal. We shall endeavor to state the facts at this time as applicable to both appeals, in order to avoid repetition when we take up the appeal of the defendant construction company. There was no evidence introduced for either defendant, except that the defendant city introduced its chief clerk in the department of streets to show that at some time during the construction of the building in question a notice was served upon the contractor to move from the street certain building material which was close to the car tracks. The notice was not produced and the date of its service is not shown. Many of the facts were conceded, and there is no substantial dispute in the testimony.

It appears that about the 1st of May, 1909, the defendant, C. L. Gray Construction Company, entered upon the erection and construction of the Des Moines Coliseum, which was erected upon private property abutting the north side of West Locust Street, adjacent to the Des Moines River, in the city of Des Moines, Iowa. The south end of the building was built up to the lot line on Locust Street and the building extended north to Grand Avenue. When the construction of the building was begun, barriers were placed across the sidewalk and parking in front of the building, and the public

thus excluded from walking along the sidewalk and the parking near to the building that was being constructed. This barrier was maintained until about the first of September. At that time these barriers were removed by the construction company because of a request, or, as some of the parties claimed, an order for their removal, made by one John Mac-Vicar, who at the time was a member of the city council of the city of Des Moines, having charge of the department of streets and public improvements. The city of Des Moines at that time was operated under what is known as the commission form of government.

The superintendent of the construction company, called as a witness by plaintiff, testified: "John MacVicar called at our office at the building site the week before the Iowa State Fair opened in 1909 and asked me to have the barrier removed so people could pass through on the sidewalk going to the fair, and I told him I would have it done. I do not remember of anything else being said."

In a later part of his deposition, he uses the expression that he received orders from MacVicar to have the sidewalk opened up, etc. When this barrier was removed, it was replaced by a similar barrier being placed about four and one-half feet from the sidewalk to the building instead of extending across the sidewalk. The last barrier was a railing three or four feet high constructed of two by four's, with boards nailed to them. This last barrier was so maintained until the latter part of November. Lumber and other materials were piled in front of the building on the outer edge of the sidewalk. When the position of the barrier was changed, about September first, the south wall of the building had been erected to a height of about twenty to twenty-five feet. On October 21, 1909, the day upon which the deceased, John Holmquist, met with the injuries resulting in his death, the south wall of the building was practically completed. Prior to the day of the death of Holmquist, the building material was hoisted to the workmen from the inside of the structure.

No materials were hoisted from the sidewalk or street. While the wall was being erected, the workmen stood on a scaffold

or platform constructed on the inside or north side of the wall. There were fifteen or sixteen men working on the wall at the time deceased was killed. When the material was

hoisted, the brick and mortar were wheeled to the workmen and placed on a platform or scaffold close to the workmen. There was generally a space of about a foot between the wall and the mortar boards, and the material was just back so the workmen could reach it handily. When the wall got scaffold high, the material was even with the top of the wall.

A little before noon on October 21st, William J. Kennedy, one of the workmen engaged on the building, was removing mortar or pointing up the surface of the wall. He was not at the time engaged in handling brick and setting the same in the wall. He was standing on the roof of a part of the building which was lower than the wall where he was reaching out and up and pointing up the work. There was a jog in the wall, so that the place where Kennedy was reaching to point up the work extended farther south than the place where he was standing.

Several photographs were introduced in evidence. The cross on the one here set out shows the place where Kennedy was standing when he was blown off the roof. This photograph shows the condition of the building but does not show the sidewalk and passageway between the railing and building as well as some of the others.

Kennedy testified:

"I was just reaching—I just finished cutting it (the mortar) all out and I went to straighten up and a heavy wind hit me and threw me off my balance and I went right over the front of the wall. I could not cut off this mortar without reaching and leaning over the wall. At the time I was blown from the building I was standing on the roof, forty-five feet high, on the southwest corner of the roof. I was standing on the southwest corner of the roof and pointing up about five feet. I was not leaning over the wall; I was reaching out that way (indicating). I was leaning out. I was holding on like this (indicating), holding on to the wall. Just after I had finished cutting off, as I turned to come in, step in, the

wind hit me just then. The wind was blowing hard, I should judge about forty miles an hour, and we had to be careful on account of that, and just happened to catch me off my balance.''

It was conceded that the deceased was struck while walking east on the sidewalk on the north side of Locust Street and in front of the building; that he was struck by W. J. Kennedy. It was conceded that deceased was struck and killed by Kennedy falling from the building, having been blown off the same as testified to by him, and falling on Holmquist, injuring him, from which injuries Holmquist died soon thereafter, and on that day. At no time was there a scaffolding constructed outside of the south wall, and at no time was there any covering, or shield, over the sidewalk.

The ordinance before referred to is as follows:

"Sec. 757. Sidewalks. Section 3. No material shall be deposited upon the sidewalk pavement in front of or along a street or alley, whereon any such building is being erected, but the sidewalk pavement shall, at all times, be kept clear for the free and unobstructed use thereof by the public. PROVIDED, it is not intended hereby to prohibit the maintenance of a driveway for the delivery of material across such sidewalk from the curb line to the building site. If the building to be erected is to be more than two stories in height, with walls at or near the sidewalk line, there shall be built over the sidewalk pavement a roof, or shield, of planks, thoroughly supported and constructed, as regards size, strength and safety, to the satisfaction of the Board of Public Works, and be maintained as long as they shall deem necessary, sufficient to protect any persons, passing along such sidewalk, from injury by falling material or debris. If there shall be excavations along or near the sidewalk pavement, a substantial railing shall be erected and maintained along such sidewalk so long as such excavations continue to exist, for the proper protection of parties passing along the sidewalk pavement.''

Though this ordinance was excluded, so far as the construction company was concerned, the court submitted to the jury the question as to whether, independently of the ordinance, the construction company failed in its duty in regard to passersby on the street. It was also conceded that in August, September and October, 1909, John MacVicar was a member of the council, and, under an ordinance passed by the city, was assigned to the duties of superintendent of the department of streets and public improvements. There was a public sidewalk on the south side of Locust Street that was clear of any obstruction during all the times that the Coliseum was being constructed, so that pedestrians having occasion to use Locust Street had a suitable and safe walk therefor. During all this time the street up to the street car track was free from obstructions aside from material while on the edge of the walk, or the edge of the street, so that people passing could walk around the front of the building in the street, or on the south side of the walk. The public had been using the sidewalk on the north side of Locust Street in front of the building from about September 1st up to October 21st by passing between the material piled on the walk and the barrier which had replaced the former one. There were no placards, or notices, placed on either side of the building warning the public that there was any danger in passing upon the walk.

1. We shall first take up the plaintiff's appeal. There are a large number of assigned errors and brief points. But we think they may be substantially covered by a consideration of the question as to whether the conditions existing in Locust Street in front of this building at the time deceased was killed constituted a nuisance which it was the duty of the city, under Sections 753 [of the Code] and 696 of the Code [Sup. 1907], to prevent; and the effect of the request, or so-called order of MacVicar in regard to removing the barrier which had extended across

1. MUNICIPAL CORPORATIONS: duty as to streets: reciprocal rights and duty of city and property owner: negligence.

the sidewalk. It is plaintiff's theory, as we understand it, that as to both defendants, the conditions existing constituted a public nuisance, for which the defendants are jointly liable, though negligence is also charged. Some of these grounds of negligence apply more particularly, it seems to us, to the construction company.

As to the second ground of negligence alleged, the city had no control over the workmen as to whether they should work when a high wind was blowing. They were in the employ and under the control of private individuals, engaged in the erection of a private building upon private property.

Without regard to the contractor's liability under the law, the liability of the defendant city must be predicated on Section 753 of the Code, which enjoins upon the city the care, supervision and control of the streets, and to cause the same to be kept open and in repair and free from nuisances. Before plaintiff can recover against the city, it must be shown that the defendant has been guilty of some act of omission or commission amounting to a breach of its corporate duty as prescribed by that statute. It is said by plaintiff that the public nuisance was, in fact, created by the city of Des Moines when its superintendent of streets ordered the Gray Construction Company to remove its barriers across the sidewalk and parking in front of this wall during the last week in August; that the act of Superintendent of Streets MacVicar, in ordering the removal of the barriers across the walk, was the act of the city because at that time the city was operating under the commission plan of government, and that his act in ordering the removal of the barriers was equivalent to the act of the city council of cities that are not operated under the commission plan. The statute, Section 1056-a25, Code Supplement [1907], provides:

2. NEGLIGENCE: proximate cause: causal connection.

"The council shall have and possess, and the council and its members shall exercise all executive, legislative and judi-

cial powers and duties now had, possessed and exercised by the mayor, city council, board of public works, park commissioners, board of police and fire commissioners, board of waterworks trustees, board of library trustees, solicitor, assessor, treasurer, auditor, city engineer, and other executive and administrative officers in cities of the first class and cities acting under special charter. The executive and administrative powers, authority and duties in such cities shall be distributed into and among five departments, as follows: . . . 4. Department of streets and public improvements. . . . The council shall determine the powers and duties to be performed by, and assign them to the proper department; shall prescribe the powers and duties of officers and employees; may assign particular officers and employees to one or more of the departments; may require an officer or employee to perform duties in two or more departments; and may make such other rules and regulations as may be necessary and proper for the efficient and economical conduct of the business of the city.''

It is conceded that MacVicar was a member of the city council, and, under an ordinance passed by the city council, he was assigned to the duties of superintendent of the department of streets and public improvements. It is not shown in the evidence that there was any ordinance defining the powers and duties of the councilmen, and there is no showing that they had any powers other than those enumerated in the statute itself. We have some doubt as to whether one member of the council has the same power as the combined body in all cases, as we understand counsel for plaintiff to claim. But it is not necessary to now determine that and consider all the provisions of the act bearing on this question because, in our opinion, the request made by MacVicar, or the so-called order to remove the barriers, was not the proximate cause of the decedent's injury and death. The injury probably would not have happened but for the wind. It

might be argued that if the request or order had not been made by MacVicar, the barrier would not have been removed; if the barrier had not been removed, the deceased would not have been on the walk at the point where he was struck; that if Kennedy had not been blown from the building, and deceased had not been at the precise point where Kennedy's body would strike; and if the wind had not been blowing Kennedy would not have been blown from the building. But we think it is too remote. We are unable to see causal connection between the order itself and plaintiff's injury. *Kirkpatrick v. Ins. Co.*, 141 Iowa 74, 81.

The ordinance before set out is relied upon by plaintiff to some extent, as against the city, as a circumstance tending to show the necessity for a barrier, or railing. Under the ordinance, no railing was required unless there were excavations, and there were no excavations at the place in question. Furthermore, while the so-called order does not relate to the roof or shield over the sidewalk, the ordinance gives the city authorities a discretion as to how long it is necessary to maintain such covering. The purpose of such covering, as stated in the ordinance, is to protect persons passing along the sidewalk from injury by falling material or debris. At the time of the injury to plaintiff's decedent the building was substantially completed; no bricks were being laid, and there was but little, if any, danger of injury from such material or debris. And the record does not show that the city had any notice or knowledge, either actual or implied, of the more or less perilous position of the employees of the construction company in leaning out and pointing up or finishing the work; that is, as to the conditions as they existed at that time. We think the act of MacVicar in requesting, or ordering, the removal of the barriers was not under the circumstances a negligent act on the part of the city, nor did it create a nuisance.

2. As stated, plaintiff claims that the nuisance was created by the city by this order of the superintendent of streets.

The so-called order is also considered as a ground of negligence, and, as we look at the matter, is substantially the only ground of negligence alleged against the city, and what has been said in regard to this order in the prior paragraph of the opinion applies when considered as a ground of negligence.

3. Plaintiff relies upon the holdings of this court in *Duffy v. City of Dubuque,* 63 Iowa 171; *Bliven v. Sioux City,* 85 Iowa 346; *Cason v. Ottumwa,* 102 Iowa 99; *Wheeler v. Fort Dodge,* 131 Iowa 566; and the sections of the statute before referred to. But these were cases where there was an improper use of the street by obstructions, and the like, such as a section of roofing, billboards, and the like, and in one case a sliding wire performance, which were, with the knowledge of the city, permitted. These were cases where the city had not performed its obligation to the public in keeping its streets free from nuisances of such character as were well calculated to result in mishap and to injure pedestrians in the street. We think the cases cited are not applicable here because plaintiff's contention ignores the right of a property owner to a reasonable use of the street for building operations such as were being carried on in the instant case. *Megginson v. Maine & Sons Co.,* 160 Iowa 541, and cases cited.

In determining whether the city had performed its duty under the statute, the duty enjoined upon it by Sec. 753 of the Code must be considered in the light of the right of the landowner to so use the street, in view of such lawful use by the landowner of a portion of the sidewalk and street. The city had the right to assume that the owners of buildings abutting the street, or the construction company, would exercise a proper degree of care to prevent injury to travelers upon the street. *Parmenter v. City of Marion,* 113 Iowa 297.

The appellee relies on the case last cited. The case is, in many respects, like the instant case, and we think is controlling here. In that case it was held that a verdict should

have been directed for the city. The facts were: That plaintiff, while passing along one of the streets of the city, was injured by being struck with a bale of hay that was thrown out of the second story of a building abutting the street. Over the sidewalk, and projecting out from the level of the second floor, was a platform fifteen feet in length and five feet in width. The bottom of the platform was eight feet and six inches above the sidewalk. The sidewalk and street itself were free of obstructions, except as to said projecting platform. On the day plaintiff received her injuries, one Rheinheimer went to the second floor of this building to procure a bale of hay. It was a cold winter day, and a strong wind was blowing from the northwest towards the front of the building. Rheinheimer pulled the bale from its place, dragging it to the door opening on to the platform, opened the door and stepped out on to the platform, at the same time saying, "Look out below"; and, giving the bale a push with hand and knee, threw it over the platform. In its descent it struck plaintiff as she was walking on the sidewalk underneath the platform. The negligence charged was that the defendant city permitted the platform to be constructed and maintained in such a manner that objects falling therefrom were likely to fall upon and injure passersby, and permitted the owner to use the same for the purpose of loading and unloading hay and straw into and from the building, to the danger of those using the sidewalk and street in front of the building, without taking steps to remove or prevent the same. The conclusions reached by the court were:

"1. That the platform itself was neither a nuisance nor an obstruction.

"2. If properly used, as defendant had the right to suppose it would be, its use did not make it a nuisance.

"3. If improperly used in such a manner as to make it a nuisance, the city was not responsible until it had, or should have had, notice or knowledge of its improper use.

. . . It may be (although we do not decide the point) that if he (Rheinheimer) persistently or continuously threw bales of hay from the second story of his building to the sidewalk below, with the knowledge, express or implied, of the city, and thereby endangered the safety of persons using the streets, and the city failed to use reasonable care to stop this dangerous use, it would be liable. But the facts do not justify the conclusion that the city had knowledge of the dangerous use of the platform. But once before, if at all, was this platform used in such a manner as to endanger the safety of those using the sidewalk. We doubt very much if the city could have interfered with the use of the platform as a place for loading or unloading hay, but, however this may be, it was not bound for any negligent or improper use thereof unless it had, or ought to have had, notice or knowledge thereof, and opportunity to prevent the same. There was not sufficient evidence to justify the jury in finding that it was so used as to be a nuisance, or that if so used, the city had notice or knowledge thereof. For these reasons, the defendant's motion for a directed verdict at the conclusion of plaintiff's evidence should have been sustained.''

In the instant case, while, doubtless, the city knew, or should have known, of the building operations of its co-defendant, in a general way, it is not shown that the situation as it was at the time of the injury to Holmquist in regard to men reaching out and up and pointing the work in a high wind, or otherwise, had existed before or that the city had any notice thereof. The act of permitting or requiring men to so work under such conditions, if negligent, as the jury must have found as to the defendant, the construction company, was the negligence of the construction company alone.

We conclude that, as to the city, the motion to direct a verdict was rightly sustained, and the ruling and judgment as to the city are affirmed.

4. Taking up now the appeal of the construction com-

pany. There was a duty resting upon this defendant in regard to persons passing on the sidewalk, regardless of the ordinance.

3. NEGLIGENCE: unusual and unforeseen accidents: ordinary care: workmen blown from building.

It was a jury question as to whether this defendant was negligent. It is said by this appellant that the immediate or proximate cause of the injury resulting in the death of plaintiff's decedent was the falling of defendant's employee from the building, and that the fall of the employee was purely accidental; that if the employee is not liable, the employer is not liable, and that deceased was guilty of contributory negligence.

While it is true the wall had been practically completed, there was some work to be done upon the wall in pointing up the work. It does not appear from the evidence whether there was to be any other work of any consequence on the outside of the wall. In striking off the mortar, or pointing up the wall, Kennedy stood on the roof, near the edge of the wall, reaching out and up, with his hand holding a higher portion of the wall, and reached around so that his body, to some extent, projected out into the street and over a part of the sidewalk below. He was in such a position as would have caused him to fall on the sidewalk if he were to lose his hold or balance and to fall. As he says, he was blown from the roof. The accident is an unusual one, but the circumstances under which Kennedy was working, where any misstep on his part, or a loosening of his hold, a gust of wind, or any accident might cause him to lose his balance and fall upon the sidewalk below, made his work one of a perilous nature, and Kennedy himself took risks. There was some danger that he might fall to the sidewalk below. There was also hazard to anyone who might be passing along the street below. There is no way that the public could know of the position in which the workmen were placed. This defendant should have known. In the progress of the work of defendant in the construction of the building, an employee is required to place himself in a hazardous or perilous position over a

public way. It is expected, of course, that the employee will use caution for his own safety, and yet there is, nevertheless, some peril not only to the employee but to the passers-by on the street, so that, regardless of any ordinance, and regardless of any request that may have been made by the superintendent of streets, it was a question for the jury to say whether this defendant exercised the care required in such cases, and whether such care required the placing of a covering over the walk, barriers across the street, or a warning of some kind to persons using the street.

One of the instructions given by the court is in substantially the following form: That defendant was required to use ordinary care to avoid accidents to travelers passing along the sidewalk, but was not bound to anticipate unusual and unforeseen accidents which a reasonably prudent person, with knowledge of all the facts which defendant knew, or in the exercise of ordinary care should have known at that time, would not have foreseen or provided against; and that, if the jury should find from the evidence that the blowing of the witness Kennedy from the building, under all the circumstances there existing, of which defendant as a reasonably prudent person knew, or should have known, was an unusual and unforeseen occurrence, and such as reasonable and ordinary care, with such knowledge as the defendant had, or should have had, in regard to the conditions and circumstances then and there existing, could not reasonably have prevented or provided against, then and in such case you should find that the defendant was not guilty of negligence in failing to build a shed or provide other protection which would have prevented Kennedy from falling upon deceased, etc. This instruction is objectionable in some respects, but it is favorable to defendant. It is the law of the case because defendant does not complain of it, and plaintiff has not appealed as to this defendant.

Under the record, we are of opinion that it was for the jury whether the injury to deceased was an accident, or

whether it was the result of negligence of the defendant.
And it was also a jury question whether, under
all the facts shown as to this defendant, and
under other instructions, of which no com-
plaint is made, the failure of defendant to
cover, guard or warn was the proximate cause of the injury
to deceased. Whether the deceased was guilty of contributory
negligence was also a question for the jury. It is true de-
ceased, in passing on the sidewalk, could see evidences that
building operations were going on, but the barriers which
had been extended across the sidewalk had been removed, so
that there was at least an implied invitation to use the walk
He may have concluded from appearances that the building
was nearing completion, or substantially completed, and may
have concluded that there was no danger. He doubtless
should have known the wind was blowing, but he had no
means of knowing all the conditions and circumstances. It
was also a question for the jury whether the barriers which
were replaced or changed about the first of September were
suitable and sufficient.

4. NEGLIGENCE:
contributory
per se: facts
not constitut-
ing.

5. The defendant requested an instruction to the effect
that if the superintendent of streets ordered and directed the
defendant to remove the barriers which were first placed in
front of the building and open up a portion
of the sidewalk to the traveling public, and
that defendant constructed other barriers
which were still there at the time of the ac-
cident complained of, then the jury should
find the defendant was not guilty of negligence and return
a verdict for the defendant.

5. NEGLIGENCE:
barriers on
streets: re-
moval on or-
ders of city:
effect on build-
er's liability.

This defendant knew the conditions existing at the time,
or should have known, but it is not shown that MacVicar,
or any officer of the city, had any knowledge or notice of the
actual conditions. When the order was made, defendant did
not inform MacVicar that work was to be done such as Ken-
nedy was doing. This defendant made no protest or objec-

tion that it would be unsafe to remove the old barriers. If the request, or order, of MacVicar was made upon imperfect knowledge of the real conditions, we think this defendant, having such knowledge, and of the danger to persons using the walk below if its workmen should fall or be thrown from the building, would not be required to comply with the request, if by so doing it would be liable to damages.

Furthermore, conceding, for the sake of argument, that the order of MacVicar was an improper one, it would not relieve this defendant of its duty to exercise the care required for the protection of persons below.

6. It is contended by defendant that its employee, Kennedy, was caused to fall from the building by reason of the high wind then prevailing, and that the injury was caused by the act of God, for which defendant is not liable. The witness Kennedy gave his estimate that the wind was blowing forty miles an hour, but it is not shown that this was extraordinary or was such as might not be expected at that time of year and at Des Moines. The jury must have found, and we think they were justified in so finding, from the evidence that the defendant was guilty of negligence. Such negligence concurring as a contributing cause with the high wind would not excuse the defendant, but it would still be liable.

6. NEGLIGENCE: act of God: when no protection.

The right of defendant to use the street for building operations, and some of the other questions argued, have been before referred to. We have noticed all points that seem to be controlling, and we conclude that no prejudicial error appears. The judgment as to this defendant is affirmed.

*Affirmed on both appeals.*

DEEMER, C. J., EVANS and WEAVER, JJ., concur.