V. E. SPIKER, Appellee, v. CITY OF OTTUMWA, Appellant.

**MUNICIPAL CORPORATIONS: Streets—Estoppel to Deny Notice.** A
1  city which issues a formal permit to make excavations in a street
may not thereafter say that it had no notice that the excavations
had been made and the street left in a dangerous condition.

**NEGLIGENCE: Operation of Automobile—Necessary Degree of Con-**
2  **trol.** The operator of an automobile is not *necessarily* guilty of neg-
ligence *per se* by failing to have the automobile under such control
that he can stop it within the distance that he can plainly see ob-
structions ahead of him.

**APPEAL AND ERROR: Indefinite Assignment.** An assignment to the
3  effect that a given instruction "is not a correct statement of law"
is quite insufficient to raise any question.

**NEW TRIAL: Verdict—Excessiveness—$3,000.** Verdict for $3,000 for
4  personal injury held nonexcessive.

*Appeal from Wapello District Court.*—FRANCIS M. HUNTER,
Judge.

FEBRUARY 7, 1922.

REHEARING DENIED MAY 8, 1922.

ACTION at law, to recover damages for personal injury.
Verdict and judgment for plaintiff. Defendant appeals.—
*Affirmed.*

*William A. Hunt,* for appellant.

*J. J. Smith,* for appellee.

WEAVER, J.—The following facts are either admitted or
have support in the evidence. Willard Street, in the city of
Ottumwa, extends north and south. It is a well improved and
much frequented street, lined on either side by residence prop-
erty. On the east side of Willard Street was the residence of
one Burnaugh. On or about November 1, 1918, Burnaugh, de-
siring to make connection between his house and the water main

in Willard Street, applied to the proper city officer, and obtained a permit authorizing him to open up the street for that purpose. The work was begun in the morning or forenoon of November 1, 1918. The trench so made extended westerly from the Burnaugh property across the course of the street to a point variously estimated at 7 to 15 feet from the west curb or margin of the traveled way. The work was done by Burnaugh or by someone in his employ. At about 4:30 P. M., the excavation appears to have been completed or suspended for the day, leaving the open trench unguarded, except by such protection as was afforded by a short section of tile, standing on end at the west end of the opening. No barrier of any kind was erected, and no warning light installed. Early in the evening, soon after 6 o'clock, the plaintiff left his place of business in a Ford automobile and, accompanied by a neighbor, drove in the direction of his home, following his usual course along Willard Street. The witnesses are not agreed as to the degree of darkness at that time, but there is testimony from which the jury could have found that there was no street light within the immediate vicinity, and that the night was sufficiently advanced to materially interfere with the view and to prevent the driver's discovery of the excavation in his way in time to avoid the accident. According to plaintiff and his companion, he was driving his car at about 15 to 20 miles per hour, and had no knowledge or notice of the excavation in the street until upon the brink of it, too late to avoid the plunge. The ditch was about two feet in width, and the car had sufficient momentum to carry it across the opening and turn it bottom upward. The accident resulted in serious injuries to the plaintiff.

There is no evidence of notice to the city of the excavation in the street, except such as may be presumed or inferred from the granting of the permit to Burnaugh; or from the open and evident character of the danger so created. At the close of the plaintiff's testimony, defendant moved for a directed verdict in its favor because of the insufficiency of the evidence to justify a recovery against the city, and because of the evident contributory negligence of the plaintiff. This motion was denied, and being renewed after all the evidence was in, was again

overruled. Later, defendant's motion for new trial was also overruled. As many of the assignments of error upon which a reversal is demanded are substantially duplications or repetitions, we shall not attempt to discuss them severally, but will, as best we can, group all the points made under the following general heads:

I. It is argued with much earnestness that the court should have sustained defendant's motion for a directed verdict because there is no showing that the city was in any manner re-

1. MUNICIPAL CORPORATIONS: streets: estoppel to deny notice.

sponsible for the excavation in the street, or had any knowledge or notice of its dangerous condition in time to remedy it before the accident. As to the general rule of law on which this objection is bottomed, there is no room for argument, and a city will not be held liable on account of a defect *not resulting from its own fault or failure of duty,* until it has notice, actual or constructive, of the danger, and reasonable time in which to remedy it. *Evans v. City of Council Bluffs,* 187 Iowa 369; *Evans v. City of Des Moines,* 169 Iowa 321; *Cohen v. City of New York,* 204 N. Y. 424; *Holmquist v. Gray Construction Co.,* 169 Iowa 502. With this statement and limitation of the rule, we face at once the vital inquiry in this case. Having given Burnaugh a permit to enter upon and tear up the street for his private use and convenience, and of necessity to interfere with the public use of the street and (unless properly guarded) to create a menace to the safety of travelers lawfully using the public way, can the city escape liability for injuries caused by the negligence of the permit holder in making the excavation, for no better reason than the failure of plaintiff to prove that notice, actual or constructive, of the open and unguarded condition of the trench had been brought home to it before the injury occurred? That there are precedents which, in greater or less degree, lend support to such defense is to be admitted, and appellant's counsel has industriously collated and cited them for our consideration. We think, however, that the proposition so urged is no longer an open question in this court. Without attempting a review of all our authorities, the following are sufficient to indicate

that the objection based on want of notice to the city in cases
of this character cannot prevail.

In *Frohs v. City of Dubuque,* 169 Iowa 431, we had to deal
with a somewhat similar case, in which, while the city was there
relieved of liability because it had, in fact, performed its duty
in guarding the excavation, we had occasion to discuss the gen-
eral rule of the city's responsibility, and said:

"The city was by statute required to keep its streets in
repair and free from nuisances, and though excavations therein
for certain purposes, as in laying sewer pipe, are necessary, and
do not necessarily constitute a nuisance, it is incumbent on the
city at all times to exercise ordinary care in guarding travelers
against injury by barricading these, or by lights warning them
against the danger thereof. This duty to take reasonable pre-
cautions as the nature of the case requires, to safeguard travel-
ers upon the street against injury from such excavations, is none
the less imperative where made by others as licensees or inde-
pendent contractors or others by permission or under the direc-
tion of the city. The duty cannot be delegated nor the re-
sponsibility evaded. * * * So that, *whether private or public
improvements are being made in the streets, and under whatso-
ever arrangement,* the obligation of the city to maintain the
streets in a reasonably safe condition and to exercise reasonable
diligence to guard and protect travelers thereon from receiving
injury is continuous."

See, also, *Pace v. City of Webster City,* 138 Iowa 107;
*Prowell v. City of Waterloo,* 144 Iowa 689; *Wheeler v. City of
Fort Dodge,* 131 Iowa 566, 575.

All the purposes to be served by notice were forestalled or
accomplished by the fact that the city, which is charged with
the nondelegable duty to care for its streets and keep them free
from nuisances, was notified in advance, and gave express per-
mission to Burnaugh to dig the trench which did the mischief.
This is not only the rule of the great weight of authority, but
is manifestly just and reasonable. As bearing upon this propo-
sition, we cite the Supreme Court of the United States in *Dis-
trict of Columbia v. Woodbury,* 136 U. S. 450, which holds that,
if an individual acting without authority or permit digs up the

street, the city will not be held liable therefor in the absence of notice, but that:

"If a permit is granted, as is usually the case, that fact is notice to the authorities that the work is in progress, and then they are charged with the duty of seeing that it is properly conducted."

Under like circumstances, where question arose as to the liability of a city for injury to a traveler who fell into a ditch dug by a private individual for the laying of water pipe, and the city sought to escape liability by plea of want of notice, the court said:

"If either [of the defendants] did it *with permission* of the city, the city was conclusively chargeable with notice, and required to see that it was properly secured and protected with guards and light." *Cleveland v. City of St. Paul,* 18 Minn. 279.

The same rule is approved by the Indiana court in *Moore v. City of Bloomington,* 51 Ind. App. 145 (95 N. E. 374); and in *Sutton v. City of Snohomish,* 11 Wash. 24. The principle is also necessarily embodied in our own oft repeated declaration that, under our statute, the care and maintenance of the streets in reasonably safe condition for public use is a primary obligation and duty which the city cannot evade or delegate to another.

It follows that the assignments of error upon the rulings of the trial court denying defendant's motion for a directed verdict because of want of notice to the city of the dangerous condition of the street cannot be sustained.

II. Appellant further relies upon the proposition that plaintiff is chargeable with contributory negligence, as a matter of law. The trial court charged the jury that, in order for

2. NEGLIGENCE: operation of automobile: necessary degree of control.

plaintiff to recover, he must establish by preponderance of evidence, not only that defendant was guilty of negligence as charged, but also that he was himself free from negligence which in any degree contributed to the injuries of which he complains. The general rule thus stated was clearly correct; but counsel contend that the court should have gone further, and told the jury that plaintiff was chargeable with contributory negligence as a matter of law, "in that he was proceeding at such a rate

of speed that he could not stop within the distance in which he could see the obstacle with which he collided.'' Such, however, is not the law of this state, either by statute or by virtue of any rule or principle approved in our decisions. On the contrary, we have distinctly refused to adopt or apply it. *Kendall v. City of Des Moines,* 183 Iowa 866; *Owens v. Iowa County,* 186 Iowa 408. The refusal to charge as requested was not erroneous.

On the general subject of contributory negligence as a question for the jury, the instructions by the court appear to be unobjectionable, and to state the law as favorably to the defendant as it could fairly demand. The plaintiff was lawfully upon the street, a street which, except for this excavation, was without any known defect, and his right to drive upon it even in the nighttime cannot be questioned. He was bound, of course, to exercise the care of an ordinarily prudent man under all the circumstances, and whether he did so was for the jury to say. In the *Frohs* case, supra, we said:

''A traveler is not bound to apprehend danger nor to be vigilant in discovering obstructions, but may walk or drive in daytime or nighttime, relying upon the assumption that the municipality has performed its duty in maintaining the streets in a reasonably safe condition for public travel, and has not by its neglect exposed him to danger.''

The answer to such questions is a matter of fact, to be drawn by the jury as a conclusion from all the admitted and proven circumstances. There is no rule by which failure to look out for or discover danger, when there is no reason to apprehend any, can rightfully be held contributory negligence, as a matter of law. *Downing v. Merchants Nat. Bank,* 192 Iowa 1250.

It is further argued that plaintiff was driving ''at a furious rate of speed,'' and was therefore negligent. The only witnesses having any knowledge on that subject were the plaintiff himself and the friend who was riding with him. Both estimate the speed at not to exceed 15 to 20 miles an hour, a rate of travel which the court cannot say conclusively shows lack of due care. The court carefully guarded its charge to the jury at this point, saying, in substance, that it was plaintiff's duty

not to drive his car at an excessive rate of speed, but to operate it at a careful and prudent speed, not to exceed 20 miles an hour; and this, we think, was all that the circumstances called for.

III.   The appellant preserved many exceptions to the giving of instructions and refusal of requests.  As to instructions given, the assignment of error is simply that the court erred in that the instruction "was not a correct state-

3. APPEAL AND ERROR: indefinite assignment.

ment of the law;" while as to requests refused, it is said that the court erred in its refusal inasmuch as the requested instruction "was a correct statement of the law."   This, it seems hardly necessary to say, is entirely too general and indefinite to entitle appellant to a review thereof on appeal.   Section 3705-a, Code Supplement, 1913.   The exception or assignment in each case is, in effect, a mere assertion that "the court is mistaken," without the slightest intimation of the nature or substance of the particular error into which it is thought the court has fallen.

IV.   Objection is made that the verdict for $3,000 is excessive.   The physician who was called at the time of the accident, and thereafter attended the plaintiff, says he found him suffering intense pain, and that, when he was removed

4. NEW TRIAL: verdict: excessiveness: $3,000.

to the hospital, an examination disclosed that he had three, four, or five ribs broken on his left side; the collar bone broken; shoulder badly bruised and mashed up; and entire breast mashed in.   One of the ribs was broken in such a way that the physician feared it would puncture the lung.   The fractures were reduced, and patient was put in a plaster cast.   He was required to lie in a half-reclining position on his back for about four weeks, and was attended by the doctor from once to three times a day.   The pressure of the fractured rib on the lung caused the man great pain,—more pain than an ordinary fracture, because of the expansion of the lung at each breath.   The impaired condition thus produced in his arm and shoulder is likely to prove permanent.   After a month in the hospital, plaintiff was removed to his home, and did not get out of the house until the 25th day of January, 1919.   He did not get "over town" until February 15th.   He continued under medical treatment, either at home or at the doctor's

office, until March 8th. At the time of the trial, in February, 1920, he was still suffering from some of the effects of his injury. At the time of his injury, plaintiff was about 45 years old, and was earning $150 per month. His expense for hospital and medical service was about $335. Because, upon this showing, the jury awarded him damages in the sum of $3,000, it is argued that something must have been added to the verdict by way of exemplary damages; but this we think cannot be so. In the first place, the jury were instructed not to assess anything by way of example or punishment, and we must assume that they obeyed the instruction. Actual damages in such cases are not limited to the expense to which the injured person has been subjected, or to his loss of time or impairment of earning power. It includes also compensation for his pain and suffering, an item the estimation of which, in the very nature of things, must be left to the reasonable and impartial discretion of the jury. We cannot say that, considering the nature and extent of the plaintiff's injuries and the pain and suffering which the evidence tends to show he was made to undergo, the verdict is so manifestly unreasonable as to indicate that it was influenced by passion or prejudice. We cannot properly interfere with the finding in this respect.

Other matters argued by counsel are either without substantial foundation in the record or are governed by the conclusions we have already announced. There is no reversible error in the record, and the judgment of the district court is— *Affirmed.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.