MAY BATIE, Appellant, v. CITY OF HUMBOLDT, Appellee.

No. 45265.

June 18, 1940.

Mitchell & Loth and Franklin Jaqua, for appellant.

Price, Rider & Keefe, for appellee.

Richards, J.—In her petition plaintiff alleged that at 3 p. m. on January 13, 1939, she sustained physical injuries by falling while traversing afoot a street crossing in defendant city; that by reason of rain and snow falling, thawing, and freezing, and the passage of vehicles and other interferences with its natural condition, the crossing had become so rough, irregular, rutted, uneven, and slippery as to be extremely dangerous and unsafe for pedestrians; that defendant city had time to know of this condition and did know but failed to remedy or ameliorate it or to make the crossing reasonably safe; that defendant negligently permitted said dangerous condition to arise and continue without using due care to make the crossing reasonably safe, and without removing any of the roughened ice and snow or safeguarding it with sand, gravel or similar substance, or otherwise providing a safe crossing. Defendant answered, making a general denial. Upon the trial defendant moved for a directed verdict at close of plaintiff's evidence. It was sustained, a verdict accordingly, and a judgment rendered against plaintiff. Therefrom she has appealed.

The court sustained the motion upon the third ground

thereof. What appears to be the substance of that ground is the following:

"3. It appears without dispute; (a) the defect was not the result of any act of the city, but of the elements; (b) because of that the only negligence of the city would be its failure to remedy the defect after notice, actual or constructive; (c) there is no evidence that any city official in any capacity had any notice or knowledge of the defect at the point of the accident; (e) * * * There is no evidence how long prior to the accident this condition existed. Because of continued rain and snow almost to the time of the accident, conditions in the street were constantly changing. * * * (f) The rain and snow continued at least till 12:30; the accident occurred not later than 3:30; and the intervening three hours is wholly insufficient as a matter of law for the presumption of constructive notice to have arisen."

Appellant assigns as error the sustaining of the motion and urges that the third ground did not warrant the ruling. In the assignment she states her reasons as follows:

"This was eror because (a) The dangerous condition existed for about 8 hours, and the only excuse for not sooner remedying it was the continued snowfall; (b) the jury could find that the city must have known or anticipated that this very danger would arise not later than the cessation of the snowfall, and this afforded over three hours in which to perform the slight act necessary to ameliorate it by sanding the crossing; (c) the jury could find that under the circumstance the prompt performance of that act was necessary to the city's use of reasonable care toward this particular crossing. These are questions for the jury, not the court."

Turning to the record, the following matters were shown by the evidence that plaintiff introduced. Plaintiff, aged 71 years, fell as she was crossing Summer Avenue at the intersection of that avenue with Sixth Avenue. Proceeding south,

she had walked into the street about 10 feet from the place where she left the sidewalk. This intersection was in the business area of defendant city. On January 12, 1939, the streets at the intersection were dry and had been swept with hand brooms. On January 13, 1939, the date of plaintiff's accident, snow was falling as early as 3 a. m., and thereafter it continued to fall until noon, with intermittent mist at times during the forenoon. At 4 a. m. the street commissioner began operating on the streets a grader, for snow removal. From that hour until 7 a. m. he went back and forth with the grader across the intersection where later plaintiff fell. The grader shoved the snow to the curbs at the intersection where it was shoveled by six men, working with the street commissioner, into a truck, and was all hauled away. The intersection was as clean as humanly possible at 7 a. m. The commissioner continued operating the grader during the entire day upon the 20 miles of streets in defendant city, until 7 p. m. For several years, in a stock pile at its maintenance sheds, the city had kept sand on hand for placing on slippery and icy crossings, and had two trucks for hauling it around. No sand had been placed upon the crossing at the time plaintiff fell. The commissioner was the only regular street employee of the city. The plaintiff testified that upon the crossing when she fell there was no snow; that it was ice, because of the packing of the wet snow with water in it, and it had frozen. She said it looked as if tramping had made it rough, and that she slipped off one of the rough places. Plaintiff's daughter testified the crossing was icy and that the ice had ridges; and was rough, and appeared as if traffic or footprints had made it so. Another witness testified that at 7:30 a. m. as he was going to work, he traversed the crossing in question, and that that early in the morning there had not been much traffic on the sidewalk there, and that he was practically making a path as he walked, although a few other people had already gone to work. He did not remember any evidence of shoveling or removal of snow, but testified he did remember seeing frozen car tracks and footprints on the crossing. The witness stated

that it was still snowing. The testimony of the weather observer at Humboldt showed the following conditions between 7 p. m. on January 12th, and 7 p. m. January 13, 1939: the maximum temperature was 34 degrees, the minimum 22 degrees, both Fahrenheit; the snowfall was 3 inches, and there was a fall of rain, sleet or hail amounting to .22 of an inch.

Plaintiff and her daughter testified concerning the condition of the surface as they walked across this street crossing. In her petition plaintiff fixes the time as 3 p. m. The testimony of the daughter was to the effect that the time may have been between 3 p. m. and 3 :30 p. m. They both describe ice on the crossing. The ice appeared, according to plaintiff's testimony, "like people had put their feet in slush and made footprints from stepping in slush that froze there." The daughter stated the ice on the crossing "looked like ice that had been made from slush." In the testimony of the weather observer there is no allocation of temperature to any particular portion of the period. His records indicated a temperature of 34 degrees during some part of the 24 hours. The witnesses who spoke upon the subject all agree that the snow fell until noon, that it was wet, and intermingled with rain, mist or sleet. They also agree that this wet snow made a slush on the intersection. Plaintiff's claim is that this slush became the ice she described. It was a failure to remove this ice or in some manner "ameliorate" conditions that constituted the alleged negligence on part of defendant city, that plaintiff pleads and upon which she bases the cause of this action. It is not claimed that it has been shown that any official of the City had actual knowledge that a condition existed at the crossing such as is described by plaintiff. Under the factual situation shown, in order that constructive notice to the City could be imputed, it was necessary to prove that the alleged defective street condition existed for such length of time that the City, in the exercise of reasonable care, would have discovered and would have had reasonable opportunity to remedy it. Spiker v. City of Ottumwa, 193 Iowa 844, 186 N. W. 465. Appellant contends that the jury could have found that

the City must have known or anticipated danger not later than the cessation of snowfall at noon, and that this afforded over three hours in which to ameliorate the icy condition by sanding the crossing. One difficulty with this fixing of a stated period is that to adopt it one must assume what is not shown, that is, must take it for granted that a freezing temperature ensued immediately upon cessation at noon of the period of wet snowfall and slush. There is no suggestion that the snowy slush created a dangerous condition. The claim is that when it became the rough and ridged ice which plaintiff claims she observed, then affirmative action for safety of pedestrians became the city's duty. There is such want of showing and indefiniteness as to when was that transformation, that we find no sound basis in the record on which to hold that imputed knowledge of and reasonable opportunity to remedy the alleged defect, could properly have been imputed by the jury to defendant, City. We are in accord with the trial court on that question . The judgment is affirmed.—Affirmed.

MILLER, SAGER, BLISS, HALE, STIGER, OLIVER, and MITCHELL, JJ., concur.