Marvin, J.
The plaintiff here was the plaintiff below and brought his suit in the court of common pleas against the city of Cleveland for personal injuries received by him on October 18, 1898.
The city of Cleveland is a municipal corporation of the state of Ohio.-' Superior street is one of the principal business streets of said city, and the sidewalk upon said street in the vicinity where the plaintiff was injured,is extensively us3d by pedestrians.
The result of the trial was a verdict for the defendant. Motion for a new trial was made by the plaintiff, which was overruled, and by proper proceedings the case is now here for review upon a petition in error. There is filed with the petition a bill of exceptions containing all the evidence adduced upon the trial.
*506 The facts are, that in the month of June, 1898, a license was given by the proper authorities of the defendant, to the owners of a lot abutting on the south side of Superior street in the city of Cleveland, to make an excavation to be used in connection with a building being erected on said lot. The owners of the lot, under the permission granted by said license, made the excavation which was still in the sidewalk at the time the plaintiff was injured. This excavation at the time of the injury was from eight to ten feet in depth, and not less than five or six’feet in diameter. For the protection of the public in the use of said sidewalk, a fence was constructed extending from the southeast corner of the building across the walk to or near to the gutter, and then longitudinally westward along the side of the walk to a point directly north of the northwest corner of the building, and then across the walk to such northwest corner. A plank walk was then built around this fence, extending from the sidewalk at the east of the fence to the sidewalk at the.west of the fence.
Sometime before the plaintiff’s injury, a part of the fence across the sidewalk at the east end of the building was removed for the purpose of carrying materials, to be used upon the building, upon the lot, When it was not necessary to have this opening for the carrying of such materials, a plank was laid upon either boxes or barrels, across this gap in the fence and between three and four feet above the sidewalk.
At about eleven o’clock on the date first herein mentioned, the plaintiff was walking from a point east of this excavation westerly along the sidewalk, and walked into the excavation and received the injury on account of which he asks damages.
The plaintiff says that at the time when he' thus walked along the sidewalk, there were no lights to indicate that there was any thing wrong with the sidewalk; and that there was no guard or protection of any sort across the sidewalk on the east side of the excavation.
•- This is denied by the defendant.
The evidence of the plaintiff tended to establish his claim in that regard.
The defendant claimed that if the plank hereinbefore *507 spoken of was not, at the time of the injury, across the walk and supported three or four feet above it, upon the barrels or boxes, that it had been so placed on the evening in question and had so remained until within a very short time of the injury; that it had no actual knowledge that such guard was not in proper position at the time of the injury; and, that if it were not there, it had been removed for so short a time that it was not the duty of the defendant to know that it had been removed; and evidence was introduced by the defendant, tending to establish this proposition
There can be no doubt, from the evidence, that the city knew of the opening in the walk, and knew of the removal of the fence, and of the manner in which the opening in the fence, caused by such removal, was guarded.
The claim on the part of the plaintiff was, and is, that it was immaterial as to his right of recovery, whether the city had either actual or constructive notice of the removal of this plank guard; that it, having knowledge of the dangerous excavation, and such excavation having been made under its license, owed to the public the duty of reasonable protection against the dangers arising from such excavation, and that the want of notice to the city of the removal of the guard or plank constituted no defense to the plaintiff’s right to recover.
This question was directly presented in the case, and the court in its charge upon that proposition, used this language:
“If the city, or those engaged in the construction of this building, exercised reasonable care by barricading his place, or by light or otherwise guarded against the dangers incident to this excavation, and that this protection which had thus been furnished — reasonably furnished against the danger — 'Was removed, on such short notice and under such circumstances as that the city had no knowledge of it and, in the exercise of reasonable and ordinary care, could not know it, would not be expected to know it, then no liability arises against the city for that reason.”
And, again, this language is used in the charge:
“So that it is requisite as one of the things to be proven by a preponderance of the evidence, either that the city had *508 actual knowledge or notice of the defect or unguarded condition, or that it had been unguarded so long and under ■such circumstances and surroundings as, in the exercise of ■reasonable and ordinary care it must have been held to have known it by reason of its long standing,”
Again, at the request of the defendant, the court charged the following:
“Before the plaintiff can recover in this case, he is required to prove by a preponderance of the evidence, that the defect in the street of sidewalk, if you find there was any defect, was unguarded, and that the defendant, the city of Cleveland, had knowledge of such unguarded condition, or that it had remained unguarded for such a length of time immediately preceding plaintiff’s injury on account thereof, that said city ought, in the exercise of ordinary care and diligence, to have known that it was unguarded.”
Again, at the request of the defendant, the court charged ■as follows:
“If you find from the evidence that the excavation complained cf by plaintiff, was reasonably guarded at any time on the evening of October 18, 1898, and previous to the injury to the plaintiff, then, and unless it appears from a preponderance of the evidence that such excavation became unguarded previous to said injury and that the defendant city had notice that it had become unguarded, or that it remained unguarded for such length of time immediately preceding plaintiff’s injury that the defendant in the exercise of ordinary care ought to have known of its unguarded condition, your verdict should be for the defendant”
These several parts of the charge, including the two requests quoted, are complained of by the plaintiff. Bach of these propositions distinctly state the law to be that before the city .could be held liable for the plaintiff’s injury, it must appear that the city had actual or constructive notice ■of the unguarded condition of the excavation at the very time the injury was received by the plaintiff.
If this is not the law, the case should be reversed because the proposition was material to the plaintiff.
It is urged on the part of the plaintiff that in a case where the city has granted permission to a property owner to make -a dangerous excavation in the street or sidewalk, its liabili *509 ly is exactly what it would be if the excavation were made by the city itself, and that, in either case, the city must respond in damages to one injured by reason of the unprotected condition of the walk or street regardless of whether it had any knowledge, actual or constructive, of the unguarded condition.
In Shearman & Redfield, section 368, this language is used:
‘‘A municipal corporation which, in the exercise of a special or general statutory power, authorizes a temporary, interference with its highway for a legitimate use by third persons, such as the laying of a railroad over or upon them, or gas and water-pipes beneath the surface, and like uses, •is bound to see that while the highway is disturbed by the •construction of such works, a passage is kept open, so far ■as practicable without interfering with the undertaking, and made reasonably safe for travel, by barriers, lights,or other ■protective measures. It is bound to use the same degree of •care for the protection of travelers as if the work were being •done by its own agents, for its own benefit; and if the interference authorized is intrinsically dangerous, if left un.guarded — e. g., an extensive street excavation1 — fit is liable, ■without notice, for an injury due to the absence of guards.”
A large number of authorities are cited in support of the proposition.
In Mayor of Savannah v. Donnelly, 71 Ga., 258, the syllabus reads:
‘‘Where a municipal corporation gave express permission to an individual to open a ditch across the street in a city, in order to connect the water-pipes of a private person with the water-works belonging to the city, this was in effect .the ■opening of the ditch by the city itself; it was the act of the •city, and the latter became liable for any damage which •might accrue to any person by reason of the careless and negligent manner in which the work was done. It was the ■duty of the city to have superintended and overlooked the work which it permitted to be done on its streets and to have •seen that it was done in such a manner that no injury should come to passers on the streets from defects therein.”
In Blessington v. Boston, 153 Mass., the second clause •of the syllabus reads:
*510 “If the city sees fit to intrust to the employes of a street railway company the duty of keeping properly guarded a defect which it knows to exist in a highway, it is responsible, under the Pub, Sts., c. 52, section 18, to one injured thereby through their negligence, whether momentary or otherwise. ’’
And in the opinion, on page 412, the court uses this'language:
“If the city trusted to the agents of this company to properly guard the hole, the city is liable for their negligence, because it intrusted to them a duty which belonged to it. * * * If these agents are negligent it must take the consequences of it.
Dillon’s Municipal Corporations, at section 1027,uses this language:
“Whether the duty of maintaining the streets in a safe condition for public travel and use is specially imposed on the corporation or is deduced, in the manner before stated, it rests primarily, as respects the public, upon the corporation, and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others, by any act of its own, ’’
Our own supreme court, in Ironton v. Kelley, 38 Ohio St., 50, pass upon a question akin to the one under consideration. In this case, a man by the name of King was engaged in laying water-pipes in the streets of the city and for the city and, in the laying of such pipes, made an excavation on a street of the city and left it open without any proper guard or protection. A passer-by, in the night season, fell into the excavation and was injured.
The court, on page 52, use this language:
“Conceding for the sake of argument, all that is claimed by the plaintiff in error upon this point, it is manifest that the wrongful act which caused the injury was not the digging of the ditch, but leaving it unprotected. It is clearly the duty of a municipal corporation having the control of its streets to keep them in a condition safe for the passage of vehicles and foot passengers, using ordinary care, at all times during the night as well as the day, This responsibility cannot be avoided by showing that the danger was caused, not by the acts of the city’s authorized agents, but by mere trespassers or wrongdoers.’’
*511 In City of Denver v. Aaron, 40 Pac. Rep. 587; which is a case decided . by the court of appeals of Colorado, thisjlanguage^is1used^in"the opinion on page 588, speaking of the city:
“If it permits others to tear up its streets, it is its duty to see that they do the work in a safe manner. It is immaterial what measure of control of the work it has reserved in itself; nor does its liability rest upon the doctrine of respondeat superior. Being charged with the care of its streets, it cannot relinquish its supervisory control of them; and whether it places them in a dangerous condition itself, or permits others to make them dangerous, it is equally responsible.”
In this case, the. city, by ordinance, had granted a license to a water company to lay pipes under the surface of the streets and, in the ordinance, it had provided that the company should save the city harmless from all lose through negligence in excavating the streets; and it was held that, though notice of the defective condition of the street was unnecessary to render the city liable, it would be presumed to have had notice by virtue of its own ordinance,
The question under consideration is very fully discussed in Gable v. Toledo, 16 Circuit Court Reports, 515. A permission had been given by the city authorities of Toledo to parties to make an excavation in the street. The opinion is by Judge Scribner, and the following language is used, beginning on page 524.
“It was the duty, therefore, according to the established doctrine of the supreme court of this state, of the city, when it issued to the parties named in his record, the permit to make this excavation, and they went forward to make it, to guard the excavation against danger to these parties. It was bound to see to it that this necessarily dangerous work was done so as to protect the party from liability to danger in the use of the street; as I have already said, it mattered not so far as this liability of the city was concerned, whether it knew that guards had not been provided, or lights had not been placed there, to warn and guard the public — it was bound to know whether it was done or not.”
The opinion is instructive, being by a most able judge, and distinctly holds that the liability of the city in cases *512 where it' has licensed others to make dangerous excavations in the streets, is precisely the same as where the excavations are made by the city itself.
B. 8. Webb and C. W. Fuller, for Plaintiff,
Hogsett, Beacom, Excell, Gage & Carey, for Defendant.
And we hold in this case that the court erred in the use of the language quoted in this opinion, from its charge to the jury, including the requests quoted.
Questions are raised in the record, as to the rulings of the court upon the introduction of evidence.
Though these are not marked upon the bill, we have examined each of them and find no error to the prejudice of the plaintiff in the court’s rulings upon any of the questions,
The jury were required to answer, and did answer, certain questions submitted to them, and these answers were returned as special findings of the jury. The answers given to these questions are not such as to relieve from the errors which have been pointed out, and the judgment of the court of common pleas is reversed and the case remanded for further proceedings.