## CONNELLY'S ADMINISTRATOR v YOUNGSTOWN (city)

Ohio Appeals, 7th Dist, Mahoning Co

No 2459. Decided August, 1938

700

C. J. Wall, Youngstown, for plaintiff-appellee.

Vern Thomas, Youngstown, and William E. Lewis, Youngstown, for defendant-appellant.

**OPINION**

By CARTER, J.

This cause is before this court on appeal on questions of law. Appellee, as administrator, brought his action in the Court of Common Pleas of Mahoning County against Cora Keast, Fred Keast and the City of Youngstown, to recover damages for the alleged wrongful death of his wife, Cora E. Connelly. It was claimed that the decedent, Cora E. Connelly, on the 6th day of October, 1930, sustained personal injuries when she attempted to walk to her home from an automobile parked along the curb in front of same; that she was caused to fall when her foot sank into a fill between the sidewalk and the curb under which a sewer connection had been made by a plumber named George Siefred. The sewer connection was made from a dwelling house located on the northerly side of Charlotte Avenue, which house was owned by Cora Keast and Fred Keast, and was at the time occupied by the Connelly family as tenants, and it is claimed in the petition that Mrs. Connelly, who was pregnant at the time, sustained personal injuries by reason of falling when stepping on this claimed depression, and that her injuries resulted in her death on the 19th day of December, 1930.

Before the taking of any testimony the defendants Cora Keast and Fred Keast, were dismissed as parties defendant by the trial judge, and the case proceeded against the city of Youngstown alone, resulting in a verdict for the defendant, the City of Youngstown; motion for new trial filed, heard and sustained. The verdict of the jury was set aside and a new trial ordered and appeal is prosecuted to this court to reverse this action of the trial court, and also final judgment is sought in this court.

At the conclusion of all the evidence, appellant made the following motion:

"Now comes the defendant at the close of all the evidence and asks the court to arrest the case from the jury, and direct a verdict for the City of Youngstown, upon the ground and for the reason that the evidence fails to make out a case of actionable negligence against the City of Youngstown; second, the petition fails to set forth sufficient facts to constitute a cause of action against the defendant; third, that the court is without jurisdiction to hear and determine this case by reason of the fact that this cause of action abated upon the death of Mrs. Connelly."

This motion was overruled and exceptions noted. Should this motion have been sustained by the trial court? If so, then there was as a matter of law no issue or issues to submit to the jury. While three separate and distinct grounds were urged in the petition as to why it should be sustained, it becomes unnecessary, on account of the view the court has taken of this matter, to pass upon but one, to-wit: That the evidence fails to make out a case of actionable negligence against the city, and if this is determined favorable to appellant, the other grounds become unimportant.

Has appellee, under the evidence, established a cause of actionable negligence against the City of Youngstown? As hereinbefore indicated, the property in question was owned by the Keasts. The Connellys were tenants thereon. The owner of the property desired to make some change in connection with the sewer and had employed George Siefred, a master plumber, to take care of this work. Mr. Siefred testified that he had lived for a number of years in this particular neighborhood, and that he did this installing of the lateral for the owners of the property; that Mrs. Connelly was perfectly familiar with the work which he was doing and that he obtained water from her home to use in tamping the ground at the time the excavation was filled; that he did puddle and tap the fill; that there was no surplus dirt left between the sidewalk and the curb; that he finished the work on August 21st, and that he saw the fill almost every day and never noticed anything unusual about it; that it would be absolutely impossible for a person walking across this fill to have her foot sink into same; that it was a dry time of the season, being in August, and that there had been but very little precipitation about that time.

He further testified that he was around the place about October 6th; that everything looked normal and safe.

John W. Johnson, investigator for the Law Department, was called as a witness on behalf of the defendant, and gave testimony as to the rain fall from the time the plumber started to make the cut up until the day Mrs. Connelly claims she fell.

We have read this record, and parts of same a second time, and we are unable to find therein any evidence of probative value that prior to appellee stepping into this claimed depression where an excavation had been made, the sewer pipe placed and filled in, that there was anything wrong with the fill at any time up to the time of the complained injury. In fact, the testimony is to the effect that the fill appeared to be in good shape; that it was level and smooth and appeared to be solid, this being the testimony of members of the Connelly family.

It must be borne in mind that this work had been completed and was not in the course of construction, and there is not a word of testimony in the record that it was not properly filled at the time of the completion of the work. Neither is there evidence that there existed at the time of her injury any apparent depression. The city was not doing this work. The plumber was doing same for the Keasts, the owners of the property. The action is bottomed on negligence of the city, in that it failed and neglected to properly tamp the loose earth and permitted the filled in excavation to remain in an infirm and loosened condition; in failing to place planks over same and failing and neglecting to place any barricades around same.

It appears to be well settled in this state that a municipality is only required to exercise reasonable care and vigilance in view of all the surrounding circumstances to keep its streets and sidewalks in reasonably safe condition for travel in the usual and ordinary modes; that it is not an insurer of the safety of the streets and sidewalks, and not liable for negligence in failing to repair, remove or guard against defects or obstructions until after notice, actual or constructive, of the disrepair, defects or obstructions of or in the street.

To this effect see 28 **Ohio Jurisprudence,** page 976, and many cases are cited in support of the text. A late case in point is the case of **City of Cleveland v Amato, 123**

Oh St 575, the first paragraph of the syllabi being as follows:

"The duty imposed upon municipalities by the provisions of §3714 GC, is the exercise of ordinary care to keep its streets, sidewalks and other public ways open, in repair and free from nuisance. Liability for damages for failure to perform such duty can not arise except upon proof either that its agents or officers actually created the faulty condition from which injury resulted or that it had notice thereof, actual or constructive."

If this fill had become in disrepair, before liability would attach, notice to the city, actual or constructive, of such condition was necessary. There is no evidence in this record that the city had actual notice of this condition.

Neither is there evidence that it existed for such a length of time that the city should have known of its disrepair, and therefore had constructive notice thereof. In fact, there is no testimony in the record which indicates that anyone, not even the Connelly family, knew this fill was in disrepair, but the testimony is that it appeared to be in good condition and that it appeared to be all right.

It is true that a permit was issued granting the property owner the right to make the sewer connection, and we are confronted with the problem as to whether the fact that a permit had been issued, and assuming the street at the point in question was out of repair, would notice, actual or constructive, to the city be necessary before liability could attach?

We have examined many authorities in this regard and there is considerable contrariety of judicial opinion, some courts holding that if a license or permit is issued to do a particular kind of work upon the street or to make excavations therein, that no notice, actual or constructive, is necessary, due to the fact that the issuing of the permit is sufficient notice. The permit in the case at bar reads as follows:

"Permit No. ..., Youngstown, Ohio, the date; in consideration of permission having been granted me to excavate in the street of house No. ..., lot No. ..., the name of the street, and the owner, I hereby agree to fill in excavation and relay and replace any guttering, sidewalk or pipes, displaced by me or my agent, to put in planks flush with the pavement wherever same is cut, and to leave the street in as good condition

as it was at the time that permission was granted. All street paving to be done by the city at my expense. I agree to provide and maintain suitable lights and barricades about the excavation made by me, and to be responsible for all damages resulting from any failure to do so. I hereby agree that where the above conditions are not complied with by me, then the city shall proceed to fill up any excavation and replace any guttering, sidewalks or pipes not relaid, replaced and filled by me, to the satisfaction of the Director of Public Service and charge the same to me. I hereby also agree that if the above charges are not paid by me, no more permission shall be granted until said account shall be settled. This may be admitted in evidence as my liability herein.

By ......................"

McQuillan on Municipal Corporations, Second Edition, Volume 7, page 97, paragraph 2940, states:

"Liability for negligence of licensee. The granting of a license to a private person to make excavations in, or place obstructions on, a street, does not necessarily relieve the municipality from liability to travelers for injuries resulting from such excavations or obstructions; and this is so although the permit was unauthorized or for an unlawful use of its streets, or where a permit is necessary but was not obtained. On the other hand, where the act for which the municipality gives a permit is, in itself, entirely proper and safe, and from which no injury could result except for the negligence of the person doing it, the municipality is not liable, at least in some states, unless it is negligent, after notice that the licensee has rendered the street unsafe for use, in taking proper precautions to prevent injury.

"The question as to which the authorities are conflicting, however, is whether notice to the municipality of the defective condition is necessary, or whether the granting of the permit is of itself sufficient notice to impose liability on the municipality for defects resulting from the exercise of the permit. Many of the decisions in regard to this matter are not clear, and in some states conflicting decisions are found, without attempt at reconciliation, and in some instances without reference in the opinion to the conflict in the same state. It is also difficult to determine in some states, just what, if any, importance is attributed to the fact that the work for which the permit is granted is intrinsically dangerous unless safeguarded. In some states, however, the rule is apparently well settled that if a municipality, empowered to do so, grants a license or a permit to third persons to use the streets, it is not liable for the negligence of the licensee in connection with the permit but only for its own negligence in not correcting the evil after notice, actual or constructive, at least if the permit does not authorize the doing of a thing intrinsically dangerous; but if supervision is reserved by the municipality, it would seem that the negligence of the licensee is attributable to the municipality without actual notice. However, in several states, the contrary rule is settled, and it is held that the municipality is liable without notice, where it has granted a permit to excavate or obstruct a street, while in other states there is more or less dicta or the like supporting the rule that no notice is necessary. However, a permit to do one thing cannot be construed as equivalent to notice of the doing of another and different thing. In still other states notice has been held unnecessary in cases where the permit was for an excavation which would be dangerous unless guarded, without commenting on the importance of the element of danger, so that it is a matter of doubt what would be the holding if the work was not intrinsically dangerous. The rule that no notice is necessary, it is submitted, is the better one, on the theory that the granting of the permit is itself in the nature of notice to the municipality, especially if the work is inherently dangerous if not properly safeguarded."

There has been some diversity of holdings in this state in this regard.

28 Ohio Jurisprudence, page 979, under the subject "liability as affected by granting of permit", the author states:

"A permit by a municipal corporation to use a portion of a street for the placing of building materials for use in the construction of a building on the adjacent property is a mere regulation of the right of the property owner to make such use of the street, and not a license to do an act in the street but for such license would be illegal or a nuisance; and a municipality by giving such permit, is not charged with the duty of seeing that the place is guarded, and will not be liable in damages to a person injured in consequence of the omission to guard such place with barriers or lights unless it had notice, express or implied, of

such omission, and after such notice was guilty of negligence. The same rule has been applied with respect to the liability of a municipality for an injury resulting from failure to guard an excavation made in a sidewalk under a permit issued by the municipal authorities. But the imposition by the municipality, in connection with the granting of permits for such temporary obstructions of the streets or sidewalks, of a condition that the person to whom such permit is granted shall take certain precautions to guard against injury from such obstructions, does not relieve the municipality of its duty to exercise reasonable care to guard against injuries from such cause.'·

In the case of **Hewitt v Cleveland, 11 O. C.D. 710,** the syllabus is as follows: "The liability of a city in a case where it has granted permission to a property owner to make a dangerous excavation in a sidewalk is precisely the same as if the excavation were made by the city itself, and in every case the city must respond in damages to one who is injured by reason of the unprotected condition of the walk regardless of whether it had any actual knowledge of such unguarded condition."

However, the holding of the court in this case was reversed as found in 87 **Oh St 534.** In the case of **Columbus v Penrod, 73 Oh St 109,** the court, in its syllabus, holds:

"A permit by a city to use part of the street for the placing of building materials for use in construction of a building on the adjacent property is the mere regulation of a right of the property owner to make such use of the street, and not a license to do an act in the street which but for such license would be illegal or a nuisance; and a city, by giving such permit, is not charged with the duty of seeing that the place is guarded, and will not be liable in damages to a person injured in consequence of the omission to guard such place with barriers or lights, unless it had notice, express or implied, of such omission, and after such notice was guilty of negligence."

The court, in the course of its opinion, say: "An examination of the cases will show that it is only when the city is the actor, or in cases of license by the city to do an intrinsically dangerous thing in the street, and not in cases properly of mere regulation, that the city is liable without notice, or is charged with notice by the fact that it gave the permit to do the thing in the street."

The court further say: "By giving such permit the city is not charged with the duty of seeing that the place is guarded, and will not be liable in damages to a person injured in consequence of the omission to guard such place with barriers or lights, unless it had notice, express or implied, of such omission, and after such notice was guilty of negligence."

As heretofore indicated, it must be borne in mind that this excavation had been filled and there was no nuisance or dangerous condition apparent after it had been, as the plumber testified, properly filled, and it is our conclusion that under the evidence in this case, before the city could be held liable, assuming the condition was as stated by the appellee at the time of the claimed injury, it would be necessary that the city actually knew of this condition, or that it had existed for such a length of time that the presumption would be that the city had knowledge.

In the absence of any evidence to that effect we are satisfied that the record fails to disclose actionable negligence as against the city of Youngstown.

A case almost identical with the case at bar is in Masterton v Mt. Vernon, 58 N. Y. 391, wherein it was held that:

"A municipality was not liable for personal injuries received by a driver, due to the negligent manner in which a licensed excavation was filled in. It appeared that the authorities granted a license to several property owners to excavate in the street for the purpose of connecting with a sewer main. The holes were apparently filled in without packing down the loose dirt, and subsequently the plaintiff, driving over the spot, suddenly sank into the loose soil and was injured. The court, in denying the liability of the municipality under the circumstances, said: 'In giving the permission, the defendant only exercised a power conferred upon it by law. The work was not in fact done by it or for its use, but wholly by the lot owners and for their own purposes. The latter employed and paid the men for doing the work, and the relation of master and servant between them and the defendant did not exist. I can see no legal reason for holding the defendant responsible for the acts or omissions of

these men. The law imposed upon the defendant the general duty of keeping its highways in a safe condition for use, and made it responsible for the omission of reasonable care under all the circumstances in this respect. If the officers knew they were unsafe, and neglected for a reasonable time to make them so, or if, from the lapse of time after the defect existed, they ought to have ascertained it, the defendant was responsible for their negligence to those who, without fault on their part, sustained an injury therefrom'."

. Coming to these conclusions, the lower court is reversed and this court, rendering the judgment which the lower court should have rendered on motion made at the conclusion of all the testimony, renders final judgment for the appellant, The City of Youngstown.

NICHOLS, PJ, and BENNETT, J, concur in the judgment.