## CITY OF DENVER v. AARON.

1. MUNICIPAL CORPORATIONS—STREETS.

The duty of keeping its streets in repair and in reasonably safe condition for travel in the usual modes rests primarily upon the municipality, and it must answer for any injury occasioned by its neglect of such duty. This duty cannot be avoided, suspended or cast upon others by any act of its own.

2. SAME—NOTICE.

Notice, actual or implied, of a defect in a street, occasioned by accident or by the act of a wrongdoer, must be brought home to the city before liability can be fastened upon it. But, under the circumstances of this case and the provisions of an ordinance, the city is conclusively presumed to have had such notice.

*Appeal from the District Court of Arapahoe County.*

Mr. A. B. SEAMAN, Mr. LOUIS K. PRATT, Mr. F. A. WILLIAMS and Mr. GEO. Q. RICHMOND, for appellant.

Messrs. SULLIVAN & MAY, Mr. CHARLES O. PATTON, for appellee.

THOMSON, J., delivered the opinion of the court.

Mendall Aaron brought this action against the city of Denver, a municipal corporation, to recover damages for injuries received by him by reason of the dangerous condition in which an excavation in one of its streets, made by The Denver Water Company, was suffered to remain. The facts in evidence were undisputed, and the court directed a verdict in plaintiff's favor for such amount as in the opinion of the jury from the evidence would compensate him for his injuries. The instructions upon the question of damages are unobjectionable; they correctly stated the law applicable to the facts, and the decision of the case here turns upon the action of the court in directing a verdict.

The facts are as follows: On the 10th day of April, 1890,

an ordinance was adopted by the city council of the defendant, granting to The Denver Water Company the right and privilege of laying down, continuing and maintaining water pipes, valves, hydrants and apparatus, for the conveyance and distribution of water in, upon, along and through certain of the streets of the city, including the street upon which the injuries were received. Section 3 of this ordinance reads as follows:

" SECTION 3.    The Denver Water Company, its successors and assigns, shall at all times, save and hold the city harmless of and from all loss, cost or damage to person or property, occasioned by any negligence in the excavation of any street, lane, alley or public place, within the city, made by it in the laying of any of its mains, pipes, valves, or other apparatus.    And whenever the said The Denver Water Company, its successors or assigns, shall open or cause to be opened any street, lane, alley or other public place for laying any mains, pipe, valve or hydrant, or other apparatus, it shall forthwith restore the same to as good condition, as the same was in before any such opening, at its own expense, and in case of any failure so to do, for a space of twenty-four hours after the laying of such main, pipe, hydrant, valve or other apparatus shall be completed, notice shall be given to the said company so to do, by the officer for the time being having charge of the streets in said city; and in case of default for twenty-four hours after such notice, the said street may be put in such order by the said city, but at the expense of the said company."

The excavation in question was made in pursuance of the grant contained in the ordinance, but although it was filled to the level of the surface of the street, and seemed to be safe and in good condition, the filling was loosely thrown in, so that wheels of vehicles upon striking it would immediately sink, thus leaving the place in a dangerous condition, and all the more dangerous because it was apparently safe.    On the 18th day of June, 1891, some days after the filling was done, the plaintiff, while crossing the street in a wagon, at

the intersection of another street, came upon the place where the excavation had been made, without knowledge of its unsafe condition, and upon striking the insufficient filling the front wheels suddenly sunk, throwing him out of the wagon, and causing the injuries complained of.

The duty of keeping its streets in repair, and in reasonably safe condition for travel in the usual modes, rests primarily upon the municipality, and it must answer for any injury occasioned by its neglect of such duty. This duty cannot be avoided, suspended, or cast upon others, by any act of its own. 2 Dillon's Mun. Corp., sec. 1024.

Notice, actual or implied, of an obstruction or defect in a street, occasioned by accident, or by the act of a wrongdoer, must be brought home to the city before any liability can be fastened upon it; but it cannot defend upon the ground of want of notice where the act is done by itself or by its authority. If it authorizes dangerous excavations to be made in its streets, either by contractors directly under it, or by persons to whom license for the purpose is granted, it cannot unburden itself of its responsibility upon those by whom the work is done. If it permits others to tear up its streets, it is its duty to see that they do the work in a safe manner. It is immaterial what measure of control of the work it has reserved in itself; nor does its liability rest upon the doctrine of *respondeat superior*. Being charged with the care of its streets it cannot relinquish its supervisory control of them; and, whether it places them in a dangerous condition itself, or permits others to make them dangerous, it is equally responsible. 2 Dillon's Mun. Corp., sec. 1027; *Storrs v. Utica*, 17 N. Y. 104; *Russell v. Town of Columbia*, 74 Mo. 480; *Haniford v. City of Kansas*, 103 Mo. 172; *Boucher v. New Haven*, 40 Conn. 456.

But waiving the responsibility imposed upon the city by law, and conceding to counsel the full benefit of their contention that its liability is dependent upon notice to it of the defect in the street, then by virtue of its own ordinance it will be conclusively presumed to have had notice. The ordi-

nance provided that, upon failure by the Water Company for twenty-four hours after laying its pipe to put the street in the required order, the city by its proper officer should notify it to do so, and, upon further failure of twenty-four hours, that the city should do the work itself. The duty it assumed was not dependent upon information to be conveyed to it of the defect, or upon the existence of the defect for a sufficient length of time to warrant a presumption that it was known. The city was obliged to know for itself whether the work was properly done or not, to the end that the required steps might be taken if it was improperly done. It gave itself twenty-four hours after the pipe was laid, and not twenty-four hours after it should receive some kind of notice, within which to move; and therefore it became bound to know, when the work was done, whether it satisfied the requirements of the ordinance. This knowledge which it was bound to have it will be conclusively presumed to have had, and it cannot be heard to say that it did not receive some other notice.

The evidence was undisputed, it fully and clearly sustained the allegations of the complaint, and the court therefore properly instructed the jury that the plaintiff was entitled to a verdict.

The judgment will be affirmed.

*Affirmed.*