[No. 12678.   Department Two.   November 20, 1915.]

MIKE LOMBARDI, *Respondent*, v. BATES & ROGERS
CONSTRUCTION COMPANY *et al.*, *Appellants*.[1]

NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — QUESTION FOR COURT.
Where there is no substantial conflict in the evidence or where but
one inference can be reasonably drawn, the question of contributory
negligence is one of law for the court.

MUNICIPAL CORPORATIONS—STREETS—EXCAVATIONS — CONTRIBUTORY
NEGLIGENCE—EVIDENCE—SUFFICIENCY.   In an action for personal in-
juries sustained by a pedestrian in falling into an unguarded street
excavation, upon a dark night, the plaintiff is shown to be guilty of
contributory negligence, as a matter of law, where it is undisputed
that the hotel building he was seeking to enter had been moved into
the street at least across the entire width of the twenty-foot sidewalk,
that an arc light was at the street intersection where the hotel had
stood, that a donkey engine stood in the street about twenty-five feet
from the building, with cables extending to the building, about which
there were planks and timbers, that there were four or five red
lights on a portable fence guarding the excavation at the edge of the
street, and others on the building and donkey engine, and other
red lights fifty feet apart along the edge of the street, and plaintiff
testified that he came to the street intersection, and passed the inter-
section two hundred feet on the other side of the street, without
seeing the building, engine or red lights, and, crossing the street,
fell into the excavation where a panel of the fence was missing.

Appeal from a judgment of the superior court for Spo-
kane county, Sullivan, J., entered June 15, 1914, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by a pedestrian in
falling into an excavation.   Reversed.

*Post, Avery & Higgins*, for appellant Bates & Rogers
Construction Company.

*Cannon & Ferris*, for appellant Guthrie, McDougall &
Company.

*Danson, Williams & Danson* (*George D. Lantz*, of coun-
sel), for appellants Gordon *et al.*

*Robertson & Miller*, for respondent.

[1]Reported in 152 Pac. 1025.

MAIN, J.—The purpose of this action was to recover damages for personal injuries. The defendants named in the amended complaint were, Bates & Rogers Construction Company, a corporation, the members of a copartnership doing business under the name and style of Guthrie, McDougall & Company, B. L. Gordon and wife, and the Chicago, Milwaukee & St. Paul Railway Company, a corporation. After the issues were joined, the cause came on for trial, and resulted in a verdict in the sum of $16,000 in favor of the plaintiff and against all of the defendants with the exception of the railway company, as to which company the cause had been dismissed. Motions for judgment notwithstanding the verdict and for a new trial being made and overruled, a judgment was entered upon the verdict against all of the other defendants. From this judgment, the Bates & Rogers Construction Company, Guthrie, McDougall & Company, and B. L. Gordon and wife appeal.

The facts are substantially as follows: Some time prior to the 14th day of November, 1912, the Chicago, Milwaukee & Puget Sound Railway Company acquired ground for its terminals and depot in the city of Spokane, on the north side of Trent avenue, formerly Front avenue. The strip of ground thus acquired was 300 or more feet wide, and extended for a number of blocks through the central portion of the city and bordering on the north line of Trent avenue. After this ground or grounds had been acquired, the railway company contracted with the Bates & Rogers Construction Company for the excavation of the same. This excavation, at some places along Trent avenue, extended to a depth of ten or more feet below the surface of that avenue and covered the entire width of the tract acquired.

Before the excavation began, it was necessary to demolish and remove the buildings which stood upon the north side of Trent avenue and upon the ground acquired by the railway company. Bernard street and Center street are streets which cross Trent avenue one block apart and at right angles

to that avenue.   The sidewalk on the north side of Trent
avenue was approximately twenty feet wide.   Through the
central portion of this street there were double street car
tracks.   The distance from the sidewalk or curb to the north
rail of the north track was approximately twenty feet.   At
the northeast corner of Bernard street and Trent avenue
there stood a three-story brick building used for hotel pur-
poses, known as the Nichols building.   This building was not
demolished and removed, as were the other buildings men-
tioned, but was retained by the railway company for a time
for office room for its engineers.   The building was sold by
the railway company to B. L. Gordon, one of the defendants,
with the agreement that he was to remove the same when
given notice by the railway company.   After the excavating
between Center street and Bernard street had been completed
with the exception of a small portion immediately surround-
ing the Nichols building, the railway company notified Gor-
don to move the building.   Gordon contracted with one A. D.
Moodie, a house mover, to move the building from its location
at the northeast corner of Trent avenue and Bernard street
to a lot on the opposite side of the street and about 200 feet
east of the east marginal line of Bernard street.   In its new
location on the opposite side of the street the building would
face north instead of south, as it did in its original location.
In moving the building, therefore, it was necessary to swing
it around so that the rear end would cross Trent avenue first.

    Moodie, first having secured a permit from the city, en-
tered upon the work of removing the building, and on the
night of November 14, 1912, it was approximately 200 feet
east of its original location, with the back end extending into
the street at least to a point beyond the curb line.   The front
end of the building extended out over the excavation.   The
building was supported by heavy timbers under which there
was cribbing.   The end of the building upon the street was
four or five feet above the street level.   About twenty or
twenty-five feet east of the southeast corner of the building,

as it stood in the street on the night of November 14, there was a donkey engine. Between the donkey engine and the building there were a number of strands of cable. About the building and between the engine and the building there were timbers and planks thrown about, such as ordinarily occurs when such a work is being prosecuted. Along the north side of the sidewalk on the north side of Trent avenue, between Center and Bernard streets, there was a portable fence made up in sections of about sixteen feet each. This fence was for the purpose of preventing pedestrians from falling into the excavation on the north side of the avenue. As the building was being swung around and moved to the east, it was necessary that the portable fence be removed in front of the progress of the building.

When the workmen on the evening of November 14 ceased work for that day, there was a space for a distance of about twenty feet on the east side of the building where the portable fence had not been restored. On the evening of the 14th, as had been the usual custom, red lights were hung upon the portable fence from Center street to Bernard street, and possibly for a greater distance. These red lights were approximately fifty feet apart. On the east side of the building being moved, there was a red light about every fifty feet distant. A red light had been placed on the southwest corner of the building as it stood in the street; one on the southeast corner, and one on the donkey engine. To the west of the building, there were red lights upon the portable fence approximately every fifty feet. At the intersection of Bernard street and Trent avenue there was an arc light.

Some time near the hour of 11 o'clock on the evening of the 14th, it being a dark and rainy night, the plaintiff fell into the excavation on the north side of Trent avenue, at a point about six feet east of the east side of the building as it stood at that time, and was severely and permanently injured. He claims that at this point when the excavation was

being done, it had encroached upon the sidewalk for a foot or two, and that it was there that he fell.

The respondent, for some time prior to the accident, had been employed upon a dairy farm at Rosalia, Washington. On November 14, 1912, he came to the city of Spokane, arriving there about three o'clock p. m. After reaching the city, he first went to a moving picture show. Then, in the evening, about the time that darkness was coming on, went to visit a friend, one Antonio Scarpelli, who was conducting a saloon at the southeast corner of Trent avenue and Washington street. Washington street was one block west of Bernard street. While in the saloon at this time, the plaintiff says that he had a glass of beer with the proprietor. After this he left the saloon and returned later in the evening, had another drink with Scarpelli, purchased a bottle of whiskey, gave his money to Scarpelli for safe-keeping, and left the saloon. He claims that he was starting for the Nichols house for the purpose of securing a room and staying all night, he having stayed at this hotel about two years previous. The respondent claims to have known nothing of the work that had been going on at the north side of Trent avenue. In leaving the saloon the second time, he came out at the entrance on Washington street, turned to the right, and came to Trent avenue. On reaching Trent avenue, he turned to the right and walked down the sidewalk on the south side of that street. When he reached the intersection of Trent avenue and Bernard street, the arc light was burning at that point. He knew that he was at the intersection of these two streets, and that the Nichols house had formerly been located at the northeast corner of the intersection thereof. When he reached this point he knew that the hotel was not then in its former location. Relative to this he testified:

"Q. When you got there you found that the hotel was not there? A. Well, I didn't see any hotel. Q. You knew the hotel had gone; they had moved the hotel away, hadn't they? A. Yes."

From this point he moved east on the south side of Trent avenue for a distance of about 200 feet, crossed the street, and went to the north edge of the sidewalk and stepped into the excavation at the point mentioned. He claims he did not see the building which was extending into the street, the engine which was nearby, the debris which was about the building, or any of the red lights. He testified that he knew that a red light was a danger signal.

In the briefs which have been filed in this case, two principal questions are presented. It is first claimed by the appellants that the mover of the building was an independent contractor, and that, therefore, none of the defendants were liable, because if the portable fence had not been removed the accident would not have happened. And second, that the accident was caused by the respondent's contributory negligence.

Moodie, who was moving the house under contract, was not made a party to the action. The Bates & Rogers Construction Company did not own the building. Neither the Bates & Rogers Construction Company nor Guthrie, McDougall & Company had anything to do with the moving of the building, or the letting of the contract therefor. Gordon, the owner of the building, simply contracted for its removal across the street, and was to pay a lump sum for the performance of the contract. He retained no supervision over the manner or method of removal. The respondent claims that each of the defendants are liable notwithstanding the independent nature of the contract for the removal of the building. This question will not be pursued or decided, because the second question, in our view, that of contributory negligence, is decisive of the action.

It is argued that the immediate and primary cause of the respondent's injury was that of intoxication. Upon the question whether the respondent was intoxicated at the time he fell and received the injury, the evidence is conflicting. The question was submitted to the jury, and we must, there-

fore, assume that the accident was not proximately caused by intoxication, notwithstanding the fact that, in our opinion, the evidence plainly shows that it was. It is a familiar rule of law that where there is substantial conflict in the evidence, or where from the established facts different inferences might reasonably be drawn, the question of contributory negligence is one for the jury; but where there is no substantial conflict in the evidence, or where but one inference can reasonably be drawn from the undisputed facts, the question becomes a legal one for the court.

In this case the undisputed facts are, that the building on the night in question projected out into the street at least across the entire width of the twenty-foot sidewalk; that there was an arc light at the intersection of Trent avenue and Bernard street, a distance of approximately two hundred feet away; that the donkey engine stood in the street twenty or twenty-five feet east of the building; that the cables extended from the building to the engine; that about the building and between the engine and the building there were planks and timbers; that there were four or five red lights on the portable fence east of the building between Center street and the east side of the building, the first light from the building being about fifty feet distant; that there were red lights on the portable fence fifty feet apart on the west side of the building extending at least as far as Bernard street; that there was a red light on the southwest corner of the building as it projected into the street; that the respondent knew that a red light was a danger signal. As already stated, the respondent testified that he saw no red lights, no building, and did not encounter any of the debris. When he got to the point where he fell, he says it was all dark beyond and over the excavation north of Trent avenue, and that in turning around he stepped into a hole in the edge of the sidewalk, and fell.

No person in the exercise of reasonable care would have crossed the street at the point where the respondent did.

According to his own statment, there was nothing on that side of the street but darkness. He cannot be heard to say that he did not see the danger signals, which would have been perfectly apparent to one using his faculties and exercising ordinary care. It is true a panel of the portable fence which served as a barrier on the east side of the building had been removed. The object of a barrier is to give warning of danger, but where the condition of the street is itself a danger signal, the necessity of a barrier is removed. *Hunter v. Montesano*, 60 Wash. 489, 111 Pac. 571, Ann. Cas. 1912 B. 955. The building itself, as it stood in the street, erected upon cribbing four or five feet high, was a danger signal.

In the case of *Lindquist v. Seattle*, 67 Wash. 230, 121 Pac. 449, cited by the respondent, "the city maintained no sign, barrier, or other warning to indicate that the sidewalk was not safe, but tacitly invited the public to use it, and it was in constant use." In the case of *Ashley v. Aberdeen*, 46 Wash. 385, 90 Pac. 210, "there was no light or notice of any kind where the sidewalk was torn up, excepting a little lumber which was piled up around the hole in the sidewalk, the only practical effect of which would be to cause a person to stumble and be precipitated into the hole." The distinction between those cases and the present is, that there, there was no notice, while in this case there was ample notice. A person, although entitled to use a public highway, and entitled to do so notwithstanding the fact of its defective character, cannot do so in the face of certain danger. If the judgment of an ordinarily prudent person would teach him that danger was certain and unavoidable, he cannot insist upon rushing into it merely because the law gives him the right to use the public highway. *Archibald v. Lincoln County*, 50 Wash. 55, 96 Pac. 831. When the respondent attempted to cross the street, the conditions which confronted him were such as would teach an ordinarily prudent and rea-

sonable person that danger was imminent.    He cannot be heard to say, "I did not see and therefore am not at fault."

The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

MORRIS, C. J., ELLIS, and PARKER, JJ., concur.