MARING, Appellant, *v.* CITY OF BILLINGS, Respondent.

(No. 8400.)

(Submitted April 2, 1943.   Decided October 18, 1943.)

[142 Pac. (2d) 361.]

*Mr. George S. Smith,* for Appellant,

*Messrs Melvin N. Hoiness, Henry A. Chapple* and *Harry A. Wooster,* for Respondent, *Mr. Wooster* argued the cause orally. *Mr. R. C. Dillavou,* of counsel,

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought action against the city of Billings to recover for personal injury sustained in a fall into an excavation in one of the city's streets. A general demurrer to the complaint was sustained, and judgment entered thereon for defendant from which plaintiff has appealed.

The complaint is lengthy, with pleading of city ordinances relating to building permits and excavations in the streets and allegations as to general practice followed by the city officials in respect to the regulations provided for therein. The fact allegations as to what occurred and as to the negligence relied on as ground of recovery are substantially as follows:

The excavation into which plaintiff fell was in a parking strip between the sidewalk and the curb. It was directly in front of a lot on which a new house was under construction and had been made in laying a water pipe and making connection with the city water main. It was covered over with loose boards and planks. The parking was faced with a concrete curb next to the street paving but was not yet surfaced with grass and was muddy.

It was in the daytime, 9:45 in the morning of October 3rd. Plaintiff, alighting from an automobile in the paved street, undertook to cross over to the sidewalk, and walking on the boards and planks over the excavation, fell in and was injured.

The excavation was about six feet deep and large enough in other dimensions for a man to work in. The connection with the water main had been completed by the plumber and the excava-

tion had been left partly open for inspection to be made by the City Water Department, as was the practice in making such water service connections. There were no warning signs and no guards or covering other than the loose boards and planks laid over the hole. The negligence complained of against the city was its failure to see to it that those making the excavation would have it securely covered and have signs, markers or signals placed there to warn pedestrians, and in that the city itself had failed to cover the excavation securely and to erect such warning signs. Negligence is also predicated upon the failure of the city to close the excavation as soon as possible after completion of the work for which it had been opened.

The error specified is the sustaining of the demurrer and the entry of judgment for the defendant. The sole question presented is whether the complaint states a cause of action.

Counsel on both sides have treated the case upon the premise of the excavation as creating a condition of the street which was dangerous to pedestrians and the injury sustained by the plaintiff as being the direct result thereof. The whole argument has been upon the question of responsibility for the condition of danger in the street and whether the city was involved to the extent that it is liable for the damage. In that aspect of the case the decision would rest on the question of notice and knowledge of the condition by the city, for it is its duty to keep the streets and all public ways in reasonably safe condition for travel.

The rule is that for any dangerous condition of the streets brought about by the city itself it is responsible, and for any such condition brought about other than by acts done by the city itself the city's responsibility arises upon notice thereof, and for injury resulting to anyone therefrom it is liable only if it "had actual notice of such defect or obstruction and reasonable opportunity to repair such defect or remove such obstruction before such injury or damage was received." It is so provided by Chapter 122, Laws of 1937, amending section 5080 of the Revised Codes of 1935.

For the application of the rule we must first have a case to

which it applies. The city is not an insurer of absolute safety to pedestrians in the use of the streets and other public ways, nor is it liable for injury sustained by pedestrians because of their own carelessness in traveling where there may be danger of injury to them. And so here it is necessary first to determine whether the facts as related in plaintiff's complaint show that the excavation in the place where it was and the condition in which it was left could be reasonably said to be of danger to pedestrians, and that the injury sustained by the plaintiff was caused by the failure of the city to warn pedestrians against the danger.

The excavation was in the parking where pedestrians do not ordinarily walk. It was between the sidewalk and the paved street and there was no necessity for anyone to walk there. A person walking on the sidewalk or in the street would be in no danger due to the excavation being in the parking. On the abutting lot a new house was under construction with the premises generally torn up and in an unfinished condition. The excavation was freshly made and there must have been the dirt from it piled up alongside. The hole was of a size large enough for a man to work in and was covered over with loose boards. There was no necessity for anyone walking across at this particular place and there was nothing about the situation there, as disclosed by the complaint, as being suggestive of the boards being laid there for that purpose. In fact, it could not reasonably be assumed that a prudent person would choose such a place to walk in view of the muddy, torn-up condition of the premises generally. Even if the city officials knew all about the excavation and had seen it in the condition it was in on October 3rd, we cannot see any negligence in their failure to place more secure covering over it nor in failing to erect barriers and warning signs to keep pedestrians from walking over it. At night, warning lights might reasonably have been required to guard against anyone unknowingly coming upon it. But we are not concerned about the condition there at night. This was in the forenoon of the day, in broad daylight. Everything was open to view. Warn-

ing signs were not necessary to tell of what was there. It could all be seen. When the conditions on the ground are plainly visible and are themselves a warning of danger, barriers and warning signs are unnecessary to ward off pedestrians. (*Lombardi* v. *Bates & Rogers Const. Co.,* 88 Wash. 243, 152 Pac. 1025; *Compton* v. *Revere,* 179 Mass. 413, 60 N. E. 931; *City of Rock Island* v. *Gingles,* 217 Ill. 185, 75 N. E. 468; *District of Columbia* v. *Moulton,* 182 U. S. 576, 21 S. Ct. 840, 45 L. Ed. 1237.)

Plaintiff, alighting from an automobile on the paved street in the vicinity of the excavation wanted to get on the sidewalk. Between the street paving and the sidewalk was the strip of unfinished parking, without grass and muddy. There was the excavation with boards laid over it. Plaintiff, rather than going to the corner crossing to reach the sidewalk, chose to walk on the boards over the excavation. She was in no way misled. What she did was of her own volition. It was at her own peril that she chose this way of reaching the sidewalk. For any injury resulting to her in walking where she did, she cannot lay the blame on the city. (*O'Laughlin* v. *The City of Dubuque,* 42 Iowa 539; *Lombardi* v. *Bates & Rogers Const. Co.,* supra.) The complaint contains no allegations of the exercise of care by the plaintiff. On the contrary, it shows affirmatively that it was her own lack of care and her own rashness in undertaking to walk where she could see there was danger of a fall that produced the injury of which she complains.

The infirmity of plaintiff's case is shown by the complaint itself in that it appears her own negligence was the proximate cause of the injury. No cause of action is stated and the demurrer to the complaint was properly sustained. (*Armstrong* v. *Billings,* 86 Mont. 228, 283 Pac. 226; *Raymond* v. *City of Lowell,* 6 Cush. Mass., 524, 53 Am. Dec. 57; 45 C. J. 1108, 1117, sections 680 and 694 "Negligence.")

The judgment of the lower court is affirmed.

MR. JUSTICE MORRIS concurs.

MR. CHIEF JUSTICE JOHNSON, concurring specially:

I concur in the result reached in the above opinion, but not in the reason therein stated. My concurrence in the result is impelled entirely by my conclusion upon the sole point argued by counsel here and in trial court, namely, whether under section 5080, Revised Codes, as amended by Chapter 122 of the 1937 Session Laws, the complaint states a cause of action, assuming that in other respects actionable negligence is shown. Unless we first find that the case meets the requirements of the statute we do not reach the question of negligence.

The section as amended provides that "before any city or town * * * shall be liable for damages" for accidental injury "suffered by reason of any defect or obstruction" in street, park, etc., "it must first be shown that said city or town had *actual notice* of such defect or obstruction and reasonable opportunity to repair such defect or remove such obstruction before such injury or damage was received * * *." The provision completely covers the field in question, and constitutes an enactment that unless actual notice, not constructive or substituted notice, is had, the city shall not be liable.

Only one exception is made; and that is by the proviso excepting from the effect of the statute cases in which the injury arose from "failure to properly place signs, markers or signals" to give warning of excavations and obstructions "caused by said city or town, * * *." The proviso relates, not to all cases in which the excavation or obstruction was caused by the city, but only to such cases in which the city also failed to give warning by means of "signs, markers or signals." It would seem, however, that in all cases in which the excavation or obstruction was caused by the city, it necessarily had *actual notice* thereof. Thus, if the excavation was caused by the city, it would seem to be liable either under the main clause or the proviso, since it would have "actual notice" and since it placed no "signs, markers or signals." However, it seems clear to me that the excavation was not caused by the city.

Some cases can be found which hold, not that by issuing per-

mits the city receives actual notice of the excavation, but that it thereby becomes a joint actor in the making of the excavation, thus becoming a joint cause of the excavation. But it is not logically correct to say that by issuing a permit the city causes the excavation; for if words mean anything the city's issuance of the permit does not *cause* the excavation. The permit is merely a prerequisite, required by ordinance, to the private contractor's act of causing it, and obviously does not make the city a joint actor in the contractor's private enterprise, nor constitute a proximate cause of the excavation.

If the city were in this case liable under the statute, it must logically be because the application for and issuance of the permit gave *actual notice* of the excavation, and not because it made the city a joint actor and thereby made actual notice unnecessary in spite of the statute.

But the complaint affirmatively shows that no permit was sought nor issued for the excavation in question. It pleads Section 539 of Ordinance No. 1177 of the city of Billings, forbidding any person to excavate in any street or public place without first obtaining a permit and filing a bond, but providing that a yearly bond may be furnished; and also Sections 201, 202 and 203 of Ordinance No. 1162, forbidding the construction of any building without a permit therefor. It then pleads "an accepted usage, custom and method of procedure" by city employees by which upon the issuance of a building permit to anyone, excavations in streets and public places "could be carried on and done without issuance" of the written permit required by Ordinance No. 1177, "providing the work was done by a person who had filed" a yearly bond as provided by Ordinance No. 1162; and pleads the filing of such bond by one Myron C. Burt and the issuance of such building permit to one E. G. Balsam. It further pleads that by reason of those facts "the said defendant had *actual notice*" that Balsam or someone else would make an excavation.

Thus the plaintiff's theory is that if there is liability it is on the ground that the city had *actual notice* of the excavation because

of the issuance of the building permit; and that the building permit gave it such notice, in spite of the requirement of a special excavation permit, because the city employees had adopted ''an accepted usage, custom and method of procedure'' contrary to the ordinance. The argument is that although the ordinance required a permit for such excavation, and no such permit was obtained in this instance, the building permit and the unauthorized administrative usage and custom had the same effect of actual notice as the required permit would have had. But the issuance of a building permit is notice that a building is to be constructed, not that an excavation is to be made. The argument may be made that since the residence could not be used without water connections the building permit gave notice of the excavation for that purpose; but (1) the residence might have been erected on the site of a former one for which such connection already existed, so that no excavation would be necessary; and (2) in any event the ordinance required a special permit for that purpose without exception, the legal duty was on the excavation contractor to obtain such special permit before making the excavation even though some other contractor had perhaps obtained a building permit, and the city had the right to assume that he would comply with the ordinance. Certainly the building permit gave the city no notice that an excavation would be made in violation of the ordinance, and it imposed upon the city no duty, during all the months in which the building was being constructed, to patrol the premises lest an excavation be made by someone without the required permit. Nor can the permit for the construction of a building by one contractor logically make the city a joint actor with another contractor in digging a hole, or make the city ''cause'' the excavation.

The situation cannot be altered by the unauthorized ''usage or custom'' of certain administrative employees in failing to require the permit made mandatory by the city's legislative authority. That unauthorized procedure cannot give the city actual notice, nor nullify the legislative enactments of city and state.

These things being true, it seems clear to me that since, with

the circumstances alleged, the city did not cause the excavation, and since it had no actual notice thereof prior to the accident, the statute made the city immune from suit for damages regardless of whether in other respects actionable negligence was alleged. Whether or not we agree with the declared legislative policy of municipal immunity is of course not material.

MR. JUSTICE ADAIR, dissenting:

The complaint alleges: That the accident complained of occurred on October 3, 1941, on Beverly Hills Boulevard, an improved public street in Billings, which street was then in a muddy condition; that in walking from an automobile stopped in said public street to the sidewalk in said street, plaintiff stepped upon some boards or planks in the street; that the boards covered an excavation in the street six feet in depth; that such boards were loose and that as plaintiff stepped upon them the boards slipped and plaintiff fell into the excavation receiving the injuries which she specifically describes and for which she brought this action for damages against the city; that on November 8, 1941, being within sixty days after receiving such injury, plaintiff caused to be filed with the city clerk a written notice of said injuries which notice was on that day presented by said city clerk to the city council of the defendant city, said council then being regularly convened.

The complaint also alleges that on August 2, 1941, a written permit was issued by the building inspector of the defendant city to one E. G. Balsam to construct a dwelling house at 306 Beverly Hills Boulevard; that Balsam, through William M. Willis, a contractor, commenced to construct the house; that Willis let a subcontract to Myron C. Burt, a plumber, for installing the plumbing and connecting same with the water main of the defendant city; that thereupon Burt entered into and upon the work of installing the plumbing and making connection with the water main of the defendant city and in doing so he made the excavation in the street in front of said Balsam premises and laid the water pipe therein from said dwelling to where connection is

made with the water main; that Burt completed the work before October 3, 1941, but that he carelessly failed to close the excavation, or, reasonably to protect it by placing a secure protection and covering over it; "but instead negligently and carelessly covered said excavation by laying loose boards or planks over said excavation, and the said Myron C. Burt also negligently and carelessly failed to place signs, markers or signals of any kind at said excavation to warn persons of said excavation, and the said defendant having actual notice of said excavation, by reason of the facts aforesaid and the usage, custom and practice aforesaid, which constituted a permit for the said Myron C. Burt to open up, dig into, excavate or tunnel in said boulevard, and said defendant having had reasonable opportunity to close said excavation, or to reasonably protect the same by placing secure protection and covering over said excavation or by placing signs, markers or signals there to warn persons of said excavation, before injuries were received by plaintiff, as hereinafter set forth, said defendant negligently and carelessly omitted its duty to see that said excavation in said boulevard was closed by back filling, tamping or puddling of said excavation, as soon as possible after the completion of the necessary work of said excavation, or within a reasonable time thereafter, or at all, and said defendant negligently and carelessly omitted to see that said excavation was reasonably protected by placing secure protection and covering over said excavation, but instead negligently and carelessly permitted the said Myron C. Burt to cover said excavation by laying loose boards or planks over said excavation, and said defendant negligently and carelessly failed to see that signs, markers or signals were placed at said excavation to warn persons of said excavation, and as a proximate result of the negligence of the said Myron C. Burt and of the defendant, as aforesaid, the said plaintiff suffered and sustained the damages hereinafter set forth."

The complaint further alleges that before commencing the work or making the excavation, Burt, the plumber, in compliance with a city ordinance, on February 19, 1941, had posted a bond

or undertaking with the defendant city to save the city harmless from damage or injury to persons or property by reason of Burt's failure to properly guard any excavation made by him in the city and by reason of failure, as soon as possible after the completion of the necessary work, to restore the street to as good condition as it was in the beginning; that said undertaking or bond was thereafter approved and accepted by the city council of the defendant city and that thereupon the plumber Burt was authorized and empowered to open up, dig into, excavate or tunnel in any of the streets, avenues, public places or alleys of the city of Billings for a period of one year from and after the 19th day of February, 1941, upon obtaining a permit therefor from the city.

The foregoing allegations, in my opinion, are sufficient to state a cause of action.

In McQuillin, Municipal Corporations, Vol. 7, section 2908, page 24, the author says: "To create a cause of action against a municipality due to a defective public way the elements are: (1) The duty to exercise ordinary care to keep its public ways in a reasonably safe and convenient condition for travel in the usual modes by day and night; (2) the violation of that duty, as evidenced by the unsafe condition of the public way at the place of the accident; and (3) the injury to the plaintiff." (See *City of Woodward* v. *Bowder,* 46 Okl. 505, 149 Pac. 138; *McLaughlin* v. *City of Los Angeles,* Cal. App. 1943, 140 Pac. (2d) 416.)

In *Brennan* v. *City of Kalispell,* 105 Mont. 547, 74 Pac. (2d) 6, 7, this court said: "In examining the complaint, we find the duty, the breach of duty, the specific acts of negligence, the proximate cause, and the allegations of damages suffered all directly and specifically alleged. The sufficiency of these allegations to state a cause of action on the grounds of actionable negligence for personal injuries is not open to doubt."

The injuries complained of in the *Brennan case,* supra, were suffered prior to the enactment of Chapter 122 of the Session Laws of 1937 termed the "notice statute." This Act of the legislature deals with two kinds of notice. The one kind of notice

is that which the injured person or someone in his behalf must give to the proper city authorities "within sixty days *after* such injury is alleged to have been received or suffered." The complaint here fully alleges the giving of such notice.

The other notice mentioned in Chapter 122, Session Laws of 1937, is actual notice of the defect or obstruction, which notice is to be given *before* the happening of the injury or damage. It is not, however, necessary in all cases that the city receive actual notice of the defective condition in advance of the happening of the accident or the sustaining of the injury for liability to attach.

"If the defective condition is due to the act of the municipality itself or of its contractors or employees, no other notice of any kind, either actual or constructive, is necessary in order to render the municipality liable for damages proximately caused thereby." (*City of Grandview* v. *Ingle,* Tex. Civ. App. 1936, 90 S. W. (2d) 855, 856. See, also, *Barry* v. *City of Butte, ante* p. 224, 142 Pac. (2d) 571.

So too, actual notice of the existence of the defect is not required where as is here alleged the city had issued a permit or order or otherwise authorized another to enter upon and tear up a public street for his private use. (See *Spiker* v. *City of Ottumwa,* 193 Iowa 844, 186 N. W. 465, 467; *Tabor* v. *City of Buffalo,* 136 App. Div. 258, 120 N. Y. Supp. 1089; *City of Denver* v. *Aaron,* 6 Colo. App. 232, 40 Pac. 587, 588.) In the last cited case the Supreme Court of Colorado, in speaking of the liability of a municipality, said: "* * * It cannot defend upon the ground of want of notice where the act is done by itself or by its authority. If it authorizes dangerous excavations to be made in its streets, either by contractors directly under it or by persons to whom license for the purpose is granted, it cannot unburden itself of its responsibility upon those by whom the work is done. If it permits others to tear up its streets, it is its duty to see that they do the work in a safe manner. It is immaterial what measure of control of the work it has reserved in itself; nor does its liability rest upon the doctrine of *respondeat superior.* Being charged with the care of its streets, it cannot relinquish its super-

visory control of them; and, whether it places them in a dangerous condition itself, or permits others to make them dangerous, it is equally responsible. (2 Dill Mun. Corp. sec. 1027; *Storrs* v. *Utica*, 17 N. Y. 104 [72 Am. Dec. 437] ; *Russell* v. *Inhabitants of Columbia*, 74 Mo. 480 [41 Am. Rep. 325] ; *Haniford* v. *City of Kansas*, 103 Mo. 172, 15 S. W. 753; *Boucher* v. *City of New Haven*, 40 Conn. 456) ''.

''Primarily the city is charged with the duty of keeping its streets, including its sidewalks, in a reasonable safe condition for travel.'' (*Nord* v. *Butte Water Co.*, 96 Mont. 311, 30 Pac. (2d) 809, 812.) This obligation of keeping the streets in a reasonably safe traveling condition belongs to the municipality itself and is a continuous one which cannot be delegated nor shifted to another.

The majority opinion says: ''The complaint contains no allegations of the exercise of care by the plaintiff.'' It is most elemental as well as fundamental and long recognized by this court: (a) That contributory negligence is a matter of affirmative defense; (b) that, being an affirmative defense, to be available it must be specially pleaded as such *by the defendant* (*Meisner* v. *City of Dillon*, 29 Mont. 116, 124, 74 Pac. 130; *Gleason* v. *Missouri River Power Co.*, 42 Mont. 238, 254, 112 Pac. 394) ; and (c) that the plaintiff was not required in her complaint to anticipate or negative possible defenses to her action. (*Pryor* v. *City of Walkerville*, 31 Mont. 618, 621, 79 Pac. 240; *McGinnis* v. *Phillips*, 62 Mont. 223, 229, 205 Pac. 215.) In the early case of *Nelson* v. *City of Helena*, 16 Mont. 21, 22, 39 Pac. 905, this court said: ''It is the doctrine of this jurisdiction that contributory negligence is a matter of defense, and that plaintiff *need not allege or prove its absence.*'' (Emphasis mine.)

The majority opinion from a mere reading of the complaint also finds that plaintiff, rather than going to the corner crossing to reach the sidewalk, ''chose to walk on the boards over the excavation,'' and that her pleading affirmatively shows that it was her own lack of care, rashness and negligence in undertaking to walk where she did that was the proximate cause of her injury. I do not think that it is within the province of either the trial

court nor of this court to adjudge and determine on the bare allegations of the complaint, with no answer filed and, no evidence taken, that the plaintiff's conduct amounted to negligence or that such conduct was the proximate cause of the injury. In *Bensley* v. *Miles City*, 91 Mont. 561, 9 Pac. (2d) 168, 171, this court said: "When two causes combine to produce an injury to a pedestrian on a city street, both of which are in their nature proximate, the one being a culpable defect and the other some occurrence for which neither party is responsible, the city will be held responsible, provided the injury would not have been sustained but for such defect." (Citing cases.) "Generally, the question of contributory negligence is one of fact for the determination of the jury." (*Olson* v. *City of Butte*, 86 Mont. 240, 283 Pac. 222, 224, 70 A. L. R. 1352.) This court, on the complaint alone, certainly is in no position to say as a matter of law, that the plaintiff was guilty of negligence and that such was the proximate cause of her injury. Whether the excavation in the street was the proximate cause of plaintiff's injury was a proper question for the jury's determination. (*Brennan* v. *Miles City*, supra; *Brunnabend* v. *Tibbles*, 76 Mont. 288, 246 Pac. 536.)

In *Tyler* v. *City of Richmond*, 168 Va. 308, 191 S. E. 625, 627, the court said: "It was her duty to exercise ordinary care for her own safety upon the occasion in question. What amounts to ordinary care is generally for the jury to decide and depends upon the circumstances of each particular case. Ordinarily a pedestrian may assume that the sidewalk is unobstructed, certainly until he has some knowledge to the contrary. He is not bound to keep his eyes constantly fixed to the sidewalk."

In *Spiker* v. *City of Ottumwa*, 193 Iowa 844, 186 N. W. 465, 467, the court said: "The plaintiff was lawfully upon the street, a street which, except for this excavation, was without any known defect, and his right to drive upon it even in the nighttime cannot be questioned. He was bound of course to exercise the care of an ordinarily prudent man under all the circumstances, and whether he did so was for the jury to say. In the *Frohs* case [*Frohs* v. *Dubuque*, 169 Iowa 431, 150 N. W. 62] we said: 'A

traveler is not bound to apprehend danger nor to be vigilant in discovering obstructions, but may walk or drive in daytime or nighttime, relying upon the assumption that the municipality has performed its duty in maintaining the streets in a reasonably safe condition for public travel and has not by its neglect exposed him to danger.'

"The answer to such questions is a matter of fact to be drawn by the jury as a conclusion from all the admitted and proven circumstances. There is no rule by which failure to look out for or discover danger when there is no reason to apprehend any, can rightfully be held contributory negligence as a matter of law. (*Downing* v. *Merchants' Nat. Bank* [192 Iowa 1250], 184 N. W. 722 [20 A. L. R. 1138])''.

This court in *Ernst* v. *City of Helena*, 104 Mont. 249, 65 Pac. (2d) 1167, 1168, said: ''The real question is, Was the plaintiff guilty of contributory negligence as the proximate cause of the injury? The plaintiff was not guilty of negligence in traveling on the walk; she was familiar with the condition. In 20 R. C. L. section 98, it is said: 'Mere knowledge of the offending instrumentality does not constitute contributory negligence. For example, a person walking or driving on the highway is not precluded from recovering for injuries produced by a defect therein merely by reason of the fact that he knew of the defect. But while an appreciation of the threatened peril is essential to destroy one's right of recovery, it is by no means true that the plaintiff must have been able to foresee the full result of this act or omission. He is not entitled to recover merely because the injury was greater than he anticipated. When, however, the specific evidence submitted only goes to the extent of establishing knowledge of the defect, the question of his contributory negligence should not be withdrawn from the jury. Indeed, it can only be in rare cases, if ever, that the question becomes one of law. In other words, it is for the jury to determine whether knowledge of the physical characteristics of the offending instrumentality constituted a sufficient warning of peril to the plaintiff.' The cases are there extensively cited in support of the

text, and the law there stated is firmly established.'' (See, also, *Bensley* v. *Miles City,* supra.)

In my opinion the complaint is good as against the general demurrer interposed and it was error to render judgment against plaintiff.

MR. JUSTICE ERICKSON:

I concur in the dissenting opinion of MR. JUSTICE ADAIR, but in view of the theory upon which the case was argued in this court, I desire to add the following:

The case was presented to the district court and to this court upon the principal question of the application of section 5080, Revised Codes, as amended by Chapter 122 of the 1937 Session Laws. So far as here pertinent that section appears in the special concurring opinion of the Chief Justice. It is well settled in other jurisdictions that when a city grants a permit to make an excavation, then the city becomes a joint actor with the person making the excavation, because of its nondelegable duty to keep the streets in a safe condition. (*Spiker* v. *Ottumwa,* 193 Iowa, 844, 186 N. W. 465; *City of Denver* v. *Aaron,* 6 Colo. App. 232, 40 Pac. 587; *Tabor* v. *City of Buffalo,* 136 App. Div. 258, 120 N. Y. Supp. 1089.)

Section 539 of Ordinance 1177 of the city of Billings provides that no person may dig into a street without first having obtained a permit and without having filed a bond. It also provides that plumbers may furnish a yearly bond. In the instant case the one who made the excavation had furnished the yearly bond but had made no application for a permit to make the specific excavation. Sections 201, 202 and 203 of Ordinance No. 1162 provide for a building permit before a building may be constructed. The excavation in question was for the purpose of connecting a building under construction to the sewer line in the street. A building permit was secured to build the building under construction. Under the ordinance the application for the building permit must show in detail the plans for the building. Those plans would necessarily show that the building is to be modern and

that connections with the sewer and water must be made. The purpose of the building permit is to give the city notice of the fact that the building is to be built, and further to give the city an oppportunity to inspect it during the course of building. It is reasonable to suppose that in granting the permit the city authorized the builders to complete it and to make the building as usable as the plans called for it. It would be ignoring common sense to say that the city, when it granted that permit, did not become aware of and authorize the permit holder to make whatever connections were necessary with the public utilities, including the sewer line and water line. By its action in fixing the building permit the city knew that the excavation would be necessary, and, to my mind, authorized the making of those excavations. It was within the power of the city, acting under the law, to issue a building permit. Its action in doing so was not *ultra vires*. The failure of the plumber to secure the permit as contemplated by section 539 of Ordinance No. 1177 in no way affects the legality of the acts of the city in issuing the building permit. It seems to me the cases cited hereinbefore are applicable and the complaint states a cause of action even though no allegation of compliance with Chapter 122 of the Laws 1937 appears.

Rehearing denied November 12, 1943.